**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ROBERT CRAIG CASSIDY d/b/a MOUNTAIN TIME
AUCTIONS, ANTIQUES, AND MATTRESSES,

                                          **Plaintiff,**

8:18-cv-00394 (BKS/DJS)

v.

ERIC MADOFF, Executive Director, New York State
Insurance Fund; NEW YORK STATE INSURANCE
FUND; CLARISSA M. RODRIGUEZ, Chair, New York
Worker's Compensation Board; NEW YORK WORKER'S
COMPENSATION BOARD; JEFF MERSMANN,
President, Pioneer Credit Recovery, Inc., a Naviant
Company; and PIONEER CREDIT RECOVERY, INC.,

                                      **Defendants.**[1]

---

**Appearances:**

*Plaintiff pro se:*
Robert Craig Cassidy
Rutland, VT 05701

*For Defendants Eric Madoff, New York State Insurance Fund,*
*Clarissa M. Rodriguez, and New York Workers' Compensation Board:*
Barbara Underwood
Attorney General of the State of New York
Brian W. Matula
Assistant Attorney General
The Capitol
Albany, NY 12224

---

[1] The Complaint does not list the New York State Insurance Fund, the Worker's Compensation Board, or Pioneer Credit Recovery, Inc., as defendants. The content of the Complaint, however, indicates that Plaintiff is suing the individuals, the state agencies, and Pioneer Credit Recovery, Inc. as defendants. (*See, generally*, Dkt. No. 1). Defendants appear to recognize this and seek dismissal of the state agencies and Pioneer Credit Recovery, Inc., as defendants in this action. (*See* Dkt. No. 7-2, at 1 (moving to dismiss "Defendants Jeff Mersmann and Pioneer Credit Recovey, Inc.); Dkt. No. 13-1, at 3 (arguing that "Plaintiff has failed to articulate any facts which would allow this case to proceed against the Workers' Compensation Board . . . or the New York State Insurance Fund)). The Court has amended the caption accordingly and directs the Clerk of the Court to add these entities to the docket as defendants.

*For Defendants Jeff Mersmann and Pioneer Credit Recovery, Inc.:*
Jacqueline M. Aiello
Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, NY 10017

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff pro se Robert Craig Cassidy, d/b/a Mountain Time Auctions, Antiques, and Mattresses, brings this action against Defendants Eric Madoff, Executive Director of the New York State Insurance Fund ("NYSIF"), the NYSIF, Clarissa Rodriguez, Chair of the New York Workers' Compensation Board ("WCB"), the WCB, Jeff Mersmann, President of Pioneer Credit Recovery, Inc. ("Pioneer"), and Pioneer. (Dkt. No. 1). He alleges denial of his due process and equal protection rights under the U.S. Constitution, which he brings under 42 U.S.C. § 1983, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g, and New York law. (Dkt. No. 1). Presently before the Court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 7, 13). Plaintiff opposes Defendants' motions. (Dkt. Nos. 15, 16). The Court held oral argument on the motions via telephone conference.  (*See* November 5, 2018 Minute Entry). For the reasons that follow, the motions are granted in part and denied in part.

## II.     BACKGROUND[2]

In 2015, Plaintiff purchased Mountain Time Furniture, a "small auction house" in Ticonderoga, New York, from Richard Harker. (Dkt. No. 1, at 3). On August 19, 2015, Plaintiff

---

[2] All facts are taken from the Amended Complaint and its exhibits and are assumed to be true for purposes of the parties' motions. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

and Harker "traveled to Elizabethtown, New York where Harker rescinded Mountain Time Furniture's business certificate and Plaintiff filed a new business registration certificate for Mountain Time Auctions, Antiques, and Mattresses, a personal proprietorship." (*Id.*).

On or about September 10, 2015, the NYSIF mailed to Harker—which Plaintiff apparently received—a statement regarding workers' compensation for "Richard D Harker DBA Mountain Time Furniture." (*Id.* at 17). The statement reflected "Workers' Compensation Activity Period – 8/11/2015 to 09/10/205" and indicated a credit of $210.84. (*Id.*). On September 16, 2015, Plaintiff "mailed back" the statement to NYSIF and crossed out "Richard D Harker DBA Mountain Time Furniture" and wrote in "Robert Craig Cassidy DBA Mountain Time Auctions." (*Id.*). Plaintiff also wrote that he was "the new owner of the business and building . . . and asked NYSIF to update their records and change workman's compensation policy ownership." (*Id.* at 3).

In a letter to Plaintiff dated October 29, 2015, NYSIF employee Titian Dion wrote that NYSIF had received Plaintiff's notification that "Richard D Harker DBA" was now "operating under the name" "Robert Craig Cassidy DBA" with respect to "WC Policy: 1351815-4." (*Id.* at 18). Dion advised that "[i]n order that you may be properly protected under the policy, it is essential that you fill out the enclosed Transfer of Interests forms," including an "Assignment of Interest Agreement," and provide, inter alia, "the name of the new firm, INCLUDING THE FEDERAL ID NUMBER." (*Id.* at 3, 18). Dion indicated that "[u]pon receipt of this form properly completed, we will issue an endorsement effecting the transfer of the policy, unless the conditions are such that the interest cannot be transferred." (*Id.* at 18).

On November 3, 2015, Plaintiff completed and mailed the "Assignment of Interest Agreement," indicating that on August 19, 2015, "WC Policy: 1351815-4," "is hereby assigned

to" "Robert Craig Cassidy D/B/A Mountain Time Auctions, Antiques, Mattresses," and that the Federal ID number was 47-5236656. (*Id*. at 4, 19). Plaintiff's insurance agent and Harker also sent the NYSIF Assignment of Interest Agreements. (*Id*. at 15, 22).

The NYSIF issued bills to "Richard D Harker DBA Mountain Time Furniture" on December 10, 2015 ($246.56), March 10, 2016 ($300.70), and May 10, 2016 ($220.46) for "workers' compensation activity periods" November 11, 2015 to March 10, 2016 and April 12, 2016 to May 10, 2016. (*Id*. at 4, 23, 23, 28). Plaintiff paid these bills and the NYSIF accepted his payments. (*Id.*).

On or about March 11, 2016, Plaintiff communicated via email with William Farnan at NYSIF concerning the filing of an "Employers' Report of Injury" for an "incident involving [employee's] accident of 10/28/2015." (*Id*. at 21). Farnan provided a "Loss ID#" and noted that the policy number was "13518154." (*Id.*). This claim was "processed" and the claim was settled. (*Id*. at 4–5).

On July 19, 2016, Plaintiff filed a "Payroll Report" for the time period April 10, 2016 to June 23, 2016 with NYSIF. (*Id.* at 5, 30). On the form, Plaintiff crossed out "Richard D Harker DBA" and "Mountain Time Furniture" and wrote in "Robert Craig Cassidy, DBA" and "Mountain Time Auctions, Antiques, and Mattresses." (*Id*. at 30). The form references policy number A 1351815-4, and next to Federal Tax ID # is written 47-5236656. (*Id.*). On the form, Plaintiff reports two part-time employees and states: "Please note DBA + firm name changes on page 1." (*Id*. at 31).

On June 2, 2016, the WCB issued Plaintiff a "Notice of Penalty Pursuant to Section 52(5) of the Worker's Compensation Law," ("WCL"), based on Plaintiff's purported failure to procure

workers' compensation insurance coverage and assessed a penalty in the amount of $12,000. (*Id.* at 32). The Notice reflects a Federal Tax ID number of 475236656 and states:

> [T]he Board has determined that:
>
> - Since 09/30/2015, the employer was required to provide workers' compensation insurance coverage for its employees.
>
> - The Board has no record of coverage for the period 09/30/2015 to the present.
>
> Therefore the [WCB] has determined that the employer is in violation of Workers' Compensation Law Section 52(5) for the period 09/30/2015 to the present. A penalty has been assessed for each 10 day period of non-compliance.
>
> . . . The Board strongly recommends that you request a review of this penalty if you were not required to have a policy. You should also request a review, to possibly reduce the penalty amount, even if you were required to have a policy.

(*Id.*). The WCB did not hold a hearing, receive evidence, employ an "unbiased referee," or provide "written findings of fact" in assessing this penalty. (*Id.* at 5). Plaintiff notes that the "very day [the WCB] fined Plaintiff $12,000.00 for not having workman's compensation insurance, Plaintiff's premium check [to NYSIF] for May 28, 2016 cleared Plaintiff's bank account." (*Id.*).

In a letter to the WCB dated July 1, 2016 regarding the $12,000 penalty, Plaintiff wrote:

> We formally protest and appeal the penalty levied without evidentiary hearing on this matter.
>
> This business has been in compliance since April 10, 2015, as the attached "Exhibit One" shows.
>
> Premiums have been paid and no less than three [Assignment of Interest] forms have been filed since September 2015.

(*Id.* at 33).[3]

---

[3] It is not clear why Plaintiff has labeled the separate pages as separate exhibits, and as appeals one through four. (*Id.* at 5, 33-36).

In a letter to Plaintiff dated October 7, 2016, the Penalty Review Unit of the WCB wrote that it had reviewed his correspondence and determined that he was "subject to the coverage requirements of the WCL" but that the WCB was unable to consider his request for redetermination because:

> The employer is currently not in compliance with the requirements for coverage under the Workers Compensation Law for the above period. No proof of coverage has been received from your insurance company. Your policy with State Insurance Fund is still under your old Federal ID#.
>
> Please be advised that if you are subject to the Workers Compensation Law and have not obtained Workers Compensation coverage, penalties will be issued for all periods in which coverage was not in effect.
>
> Please advise your NYS Workers' Compensation Insurance carrier. [sic] THE STATE INSURANCE FUND to submit your coverage information electronically. This carrier should report this policy using your correct Federal ID# 475233656.

(*Id.* at 37 (emphases omitted)). The Federal Tax ID number Plaintiff had included on all of his prior correspondence with NYSIF was 475236656.[4] (*See, e.g.*, *id*. at 22). Plaintiff asserts that, for nine months, NYSIF "had maliciously denied Plaintiff a change of federal tax number even as it took Plaintiff's funds and refused Plaintiff's attempts to change Harker's Federal account number to Plaintiff's Federal number." (*Id.* at 6).

On or about December 21, 2016, Plaintiff received a second penalty notice from the WCB "raising the penalty to $22,000.00" without a hearing, evidence, written findings of fact, or an unbiased referee. (*Id.* at 6, 40). Plaintiff's "gross payroll for the quarter ending December 31, 2016 was less than $2,000" and the WCB's action "put Plaintiff out of business." (*Id.* at 6).

---

[4] There is no indication in the Complaint whether the number in the WCB letter contains a typographical error or what impact, if any, these two different Federal Tax ID numbers had on the issues in this case.

The same day he received the WCB's penalty notice (December 21, 2016), Plaintiff

received "a notice from Pioneer claiming a $4,840.00 fee for collecting Plaintiff's 'delinquent'

account." (*Id*. at 6, 41). In the letter to Plaintiff, Pioneer wrote:

> The New York State [WCB] referred your account to our agency
> for collection. Your delinquent fines and fees totaling $22,000.00
> are due in full. Please send payment to Pioneer . . . .
>
> Failure to resolve your debt may result in the filing and execution
> of a judgment against you and/or your business as allowed under
> the Workers' Compensation Law and New York Civil Practice
> Law and Rules enforceable by the [WCB].

(*Id*. at 41). Pioneer further advised that Plaintiff was subject to a "22% debt collection fee,"

"[i]nterest on past due non-tax debt," and interest at the rate of 9% "on all claims for which the

Board files judgment." (*Id*.). Pioneer further indicated that the WCB had determined that

Plaintiff was "required to procure and maintain mandatory workers compensation and disability

benefits insurance" and that if he believed he was "entitled to a rescission of the penalties

assessed because you were exempt from maintaining insurance, you must forward evidence to

us." (*Id*.).

On or about January 23, 2017, Plaintiff wrote to Pioneer that he disputed the validity of

the debt:

> I acknowledge receipt of this document on 27 December 2016.
>
> I dispute the validity of this debt.
>
> Please obtain verification of this debt and mail me a copy of such
> purported verification.

(*Id*. at 47).  Plaintiff alleges that Pioneer did not respond to his request for verification.  (*Id*. at

11).

In a statement from the WCB Bureau of Compliance dated February 14, 2018, the WCB indicated that $22,500.00[5] was due and that the "Total Due in Summary Section includes $22,500.00 net due in judgments obtained in New York State Supreme Court." (*Id.* at 44–45). Plaintiff, however, had "never been summoned to New York State Supreme Court in this matter." (*Id.* at 7). Further, according to Plaintiff:

> Defendant [WCB] appears to operate in collusion with NYSIF in the arranging of penalty schemes. In fact a New York State website refers to NYSIF and [WCB] as "the Players in the System." NYSIF damages responsible firms and individuals and [the WCB] swoops in with its huge penalties levied without due process. Pioneer then colludes with [the WCB] to make a minimum levy 122% of penalty levied—all without due process.

(*Id.*). Plaintiff further contends that while NYSIF accepted his payments and settled a workers' compensation claim, it "maliciously refused to change the federal identification number of workman's compensation policy A 1351 815 4." (*Id.* at 5).

In addition, Plaintiff alleges that, on March 4, 2017, he was a vendor at a toy show and that he was "[f]earing seizure of his vehicle and inventory by agents of [the WCB] or Sheriff deputies to satisfy the [WCB's] alleged penalty." (*Id.* at 13–14). Because he was distracted, Plaintiff "did not notice that the rear door of his box truck had only half opened" and "[r]unning up the truck's ramp, Plaintiff struck his head on the half-closed door" and fell three feet onto the "frozen parking lot" and suffered a concussion. (*Id.* at 13–14). In addition, the $22,000 penalty forced Plaintiff to "lay off his employee as it was unlawful to have employees without Workman's Compensation Insurance." (*Id.* at 14). Consequently, Plaintiff, who was unable to carry the workload on his own, could no longer run his business. (*Id.*).

---

[5] The record does not reflect why the penalty increased from $22,000.00 to $22,500.00.

Plaintiff alleges that: (1) Defendants NYSIF and Madoff violated his Fourteenth Amendment right to due process and equal protection by failing to provide, inter alia, an unbiased tribunal, notice of proposed action, or an opportunity for Plaintiff to oppose the action; (2) Defendants WCB and Rodriguez violated his Fourteenth Amendment right to due process and equal protection by obtaining a judgment from New York State Supreme Court without notice to him; (3) Defendants Mersmann and Pioneer violated his Fourteenth Amendment right to due process by failing to respond to Plaintiff's notification that he disputed the debt; (4) all Defendants engaged in racketeering activity, in violation of RICO, through extortion and at least two acts of mail or wire fraud; and (5) Defendants WCB and Rodriguez's actions caused him personal injury. (*Id*. at 8–14). Plaintiff seeks an order enjoining Defendants from further collection actions, awarding damages in the amount of $150,000, and referring this matter to the Office of the United States Attorney for further investigation. (*Id*. at 15).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with

'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.    DISCUSSION

### A.    Subject-Matter Jurisdiction

The State Defendants (the WCB, Rodriguez, the NYSIF, and Madoff) assert that the Court "lacks diversity jurisdiction" over this matter because Plaintiff fails to plead plausible damages that would satisfy the diversity statute's $75,000 amount in controversy requirement. (Dkt. No. 18, at 3–5); *see* 28 U.S.C. § 1332. This argument is inapposite; "domestic sovereigns—i.e. the states themselves—cannot sue or be sued in diversity." *Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir. 1997). In any event, the Court has federal-question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over related state law claims under § 1367.

### B.    *Rooker-Feldman* Doctrine

The State Defendants argue that Plaintiff is attempting to seek relief from the New York State Supreme Court's entry of judgment and that his claims are therefore barred by the *Rooker-Feldman* doctrine. (Dkt. No. 13-1, at 13). "*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The *Rooker-Feldman* doctrine holds that lower federal courts lack "subject matter jurisdiction 'over cases that effectively seek review of judgments of state

courts.'" *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (quoting *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996)). District courts "do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional," and "[r]eview of those decisions may be had only" in the Supreme Court of the United States. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *cf.* 28 U.S.C. § 1257.

In *Hoblock v. Albany County Board of Elections*, the Second Circuit outlined the "four requirements for the application of *Rooker-Feldman*": "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain[] of injuries caused by [a] state-court judgment[.] Third, the plaintiff must invite district court review and rejection of [that] judgment[]. Fourth, the state-court judgment must have been rendered before the district court proceeding commenced." 422 F.3d 77, 85 (2d Cir. 2005) (alterations in original) (internal quotation marks omitted). In determining whether to apply the bar of *Rooker-Feldman*, courts in the Second Circuit typically analyze the "substantive" requirements (second and third) before proceeding through the "procedural" requirements (first and fourth). *See id.*; *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007).

In this case, Plaintiff complains that, on December 21, 2016, the WCB wrongfully imposed $22,000 in penalties without notice or a hearing, in violation of his due process rights. (Dkt. No. 1 at 6, 40). According to the Complaint, at some point between December 21, 2016 and February 14, 2018, the WCB obtained $22,500 "in judgments" in state court under WCL § 26.[6] (*Id.* at 7, 40, 45). Thus, as alleged, the actions that caused the injury—the imposition of

---

[6] WCL § 26 states, in relevant part:

in case of failure by an employer, within twenty days after it is due, to pay an assessment imposed by the chairman pursuant to subdivision five of section fifty-two of this chapter, the chairman in any such case . . . may file with the county clerk . . . a certified copy of the chairman's order

$22,000 in penalties—occurred prior to the state court proceeding, which appears to have ratified the WCB's allegedly unlawful penalty activities. *See Hoblock*, 422 F.3d at 88 (requiring that the injury be "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it"); *see, e.g.*, *Sindone v. Kelly*, 439 F. Supp. 2d 268, 274 (S.D.N.Y. 2006) ("[E]ven if Sindone's federal claim sought to deny and reverse the state court judgment, his claim would be 'independent' for *Rooker–Feldman* purposes to the extent that the 'source of the injury' he complains about emanates in the first instance from his dismissal by the NYPD, and not collaterally from the state court judgment rendered in the Article 78 proceedings affirming the NYPD's action . . . the state court judgment merely 'ratified, acquiesced in, or left unpunished' the decision of the NYPD" (quoting *Holblock*, 422 F.3d at 86–89)), *aff'd*, 254 F. App'x 58 (2d Cir. 2007)); *Jefferson v. Chicara*, No. 13-cv-5649, 2015 WL 1439932, at *3, 2015 U.S. Dist. LEXIS 40815, at *9 (E.D.N.Y. Mar. 26, 2015) ("Though the state-court habeas proceeding ratified Plaintiff's allegedly unlawful detention after it commenced, the mere ratification is insufficient to trigger the application of the *Rooker–Feldman* doctrine.").[7] Accordingly, the Court concludes that the *Rooker-Feldman* doctrine does not bar Plaintiff's claims.

## C. Sovereign Immunity

Sovereign immunity bars a suit in federal court against a state, absent the state's consent to suit or congressional abrogation of immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). "New York has not waived its immunity, nor has Congress abrogated it." *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir.

---

imposing, and the demand for payment of, such assessment, and thereupon judgment must be entered in the supreme court by the clerk of such county in conformity therewith immediately upon such filing.

[7] Copies of the unpublished decisions cited herein will be mailed to Plaintiff in light of his pro se status.

2017) (citation omitted). "A claim [for damages] against state officials in their official capacities is likewise barred." *Id*. Thus, to the extent Plaintiff seeks damages against the NYSIF, the WCB, Madoff, and Rodriguez (in their official capacities), his claims are dismissed. *See Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) (agreeing "with the district court that the [NYSIF] is a 'state agency' entitled to sovereign immunity"); *Palma v. Workers Comp. Bd. of N.Y.*, 151 F. App'x 20, 21 (2d Cir. 2005) ("The [Workers Compensation] Board, as an agency of the New York State government, is entitled to sovereign immunity under the Eleventh Amendment.").

In the Complaint, Plaintiff also "asks the District Court to . . . order the defendants individually and collectively to halt any and all collections actions against Plaintiff." (Dkt. No. 1 at 15). "Under the well-known exception to [the sovereign immunity bar] first set forth in *Ex parte Young*, 209 U.S. 123 (1908), 'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (explaining that "there is 'a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment'" (quoting *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)). Likewise, "claims for prospective equitable relief, such as . . . declaratory judgment" are not barred by the Eleventh Amendment. *Conyers v. Rossides*, 558 F.3d 137, at 150 (2d Cir. 2009). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh

Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Daily Mart Convenience Stores, Inc. v. Nickel* (*In re Dairy Mart Convenience Stores, Inc.*), 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. at 154, 157). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Id.*

The State Defendants have not addressed Plaintiff's request for injunctive relief. As it is plausible, based on the allegations in the Complaint and the attached exhibits, that the Defendant Rodriguez, as the current chair of the WCB, has "some connection with the enforcement" of the penalty and provisions of the WCL, Plaintiff's request for prospective injunctive relief against Defendant Rodriguez may proceed. (*See* Dkt. No. 1, at 37 (letter to Plaintiff from WCB identifying Kenneth J. Munnelly as chair of the WCB and informing Plaintiff that his request for a redetermination was denied)).

As there is, however, no allegation that the NYSIF has any connection to the WCB's efforts to enforce the penalties imposed on Plaintiff, there is no plausible basis for prospective injunctive relief against Defendant Madoff as the executive director of the NYSIF. Read liberally, the Complaint may be construed as seeking an order declaring that NYSIF should be equitably estopped from denying that it provided workers' compensation insurance to Plaintiff. Although the parties have not briefed this issue, it does not appear that this would constitute prospective equitable relief. *See, e.g.*, *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)

(finding the "declaratory judgment sought by the Fitzpatrick subclass is unavailable in federal court" because there was, inter alia, "no 'claimed continuing violation of federal law,'" explaining that "[a]ny declaration could say no more than that Connecticut had violated federal law in the past" (quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985)). Accordingly, the claims against the WCB, the NYSIF, and Defendant Madoff in his official capacity are dismissed but may proceed as against Defendant Rodriguez.

### D. Section 1983 Claims

#### 1. Defendants Mersmann and Pioneer

Defendants Mersmann and Pioneer move to dismiss the § 1983 claims against them on the ground that they are private actors "who were never acting 'under the color of state law.'" (Dkt. No. 7-2, at 17). Plaintiff alleges that these Defendants violated his due process rights by "colluding" with the WCB. (Dkt. No. 1, at 6).

"Under 42 U.S.C. § 1983, constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). "[A] claim against a private entity must 'allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. To advance a claim against a private party under a § 1983 conspiracy theory, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. "The concepts of acting 'jointly' or in

'conspiracy with' state actors are intertwined. Even if considered as conceptually separate theories, both require the pleading of facts sufficient to show something more than conclusory allegations." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citations omitted).

Plaintiff alleges that Defendants Mersmann and Pioneer must have conspired with the WCB because Pioneer's bill "was postmarked the same day . . . as the [WCB's] $22,000.00 penalty notice," and asserts that "Pioneer knew of [the WCB's] penalty levy before Plaintiff knew." (Dkt. No. 1, at 6). While the WCB engaged Pioneer to collect the penalty, (Dkt. No. 1, at 41), "[t]he mere fact that a private actor . . . is hired by a state actor, is insufficient to establish state action." *Emanuel v. Griffin*, No. 13-cv-1806, 2013 WL 5477505, at *5, 2013 U.S. Dist. LEXIS 14272, at *17 (S.D.N.Y. Oct. 2, 2013). Further, the allegation that Pioneer's bill was postmarked the same day as the WCB's penalty notice, without more is insufficient to allow an inference of joint activity or a conspiracy between Defendants Mersmann and Pioneer to violate Plaintiff's due process rights. *See Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) ("'[C]onclusory allegations' or 'naked assertions' of a joint activity are not sufficient to survive a motion to dismiss." (quoting *Stewart*, 851 F. Supp. 2d at 445)); *Young v. Suffolk County*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010) ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."); *see also Iqbal*, 556 U.S. at 679 (explaining that complaint does not state a claim if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"). Accordingly, Plaintiff's § 1983 claims against Defendants Mersmann and Pioneer are dismissed.

### 2.	Individual Liability

"An individual may be held liable under . . . § 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

> Personal involvement can be established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring. In addition to fulfilling one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.

*Id.* In this case, there are no allegations of personal involvement by any of the named defendants. Accordingly, to the extent they are sued individually under § 1983, such claims are dismissed.

Although the Complaint refers to "NYSIF employee Mr. Titian Dion" in connection with Plaintiff's efforts to obtain insurance coverage, (Dkt. No. 1, at 3), Mr. Dion is not named as a defendant in this matter. In the event Plaintiff files an amended complaint, (*see infra* Section V), adding Mr. Dion as a NYSIF employee who was personally involved in the alleged deprivation of due process, *cf. Strunk v. N.Y. State Ins. Fund*, 47 F. App'x 611, 612 (2d Cir. 2002) (affirming dismissal of due process claim against NYSIF employees where the plaintiff failed to allege "the existence of a property interest in the issuance of a workers' compensation policy or that he was irrationally or arbitrarily denied coverage, as required to state a due process claim"), he should list Mr. Dion as a defendant in the caption of the amended pleading and allege facts demonstrating his specific involvement in the constitutional deprivations alleged in sufficient

detail to establish that he was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

### 3. Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."). As the Second Circuit has observed, "the Fourteenth Amendment guarantee of due process is fully applicable to adjudicative proceedings conducted by state and local government administrative agencies." *N.Y. State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001).

"To succeed on a procedural due process claim, 'a plaintiff must first identify a property right, second show that the state has deprived him [or her] of that right, and third show that the deprivation was effected without due process.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Id.* (quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011)).

Here, Defendant Rodriguez does not dispute that the substantial penalties assessed against Plaintiff by the WCB implicate a protected property interest for purposes of procedural due process. *See Transcon. Refrigerated Lines Inc. v. Workers Comp. Bd.*, 269 A.D.2d 714, 716 (3d Dep't 2000) ("Turning to TRL's due process argument, there can be little doubt that the

imposition of a civil penalty [by the Workers' Compensation Board] in excess of $35,000 deprived TRL of a property interest."). Defendant Rodriguez argues, however, that "in light of New York's procedures for the review of WCB decisions," the process available was sufficient. (Dkt. No. 13-1, at 7).

The procedures in New York WCL provide as follows. Section 50 of the WCL requires an employer to "secure compensation to his employees" by procuring workers' compensation insurance coverage. N.Y. Workers' Comp. Law § 50(1). To do so, an employer may, inter alia, purchase a policy through a state-authorized insurance company or from the NYSIF, "which was created by statute for that purpose." Martin Minkowitz, *Practice Commentaries*, McKinney's Cons. Laws of N.Y., Book 64, N.Y. Workers' Comp. Law § 50; *see also* N.Y. Workers' Comp. Law § 76(1) (explaining that the NYSIF was created "for the purpose of insuring employers against liability for personal injuries or death sustained by their employees").

Section 52 of the WCL governs the "failure to secure compensation" and allows the chair of the WCB, "upon finding that an employer has failed" to maintain workers' compensation insurance coverage, to "impose . . . a penalty of up to two thousand dollars for each ten day period of non-compliance." N.Y. Workers' Comp. Law § 52(5). An employer may contest the penalty within "thirty days after notice of the imposition of a penalty by the chair" by applying "in affidavit form for a redetermination review of such penalty." *Id.* The chair is then required to respond "in writing on the issues raised on such application." *Id.* An employer may appeal the "redetermination review decision" to the Appellate Division of the Third Judicial Department "within thirty days after notice." *Id.* § 23.

If an employer fails to pay the penalty assessed "within twenty days after it is due," the chair "may file with the county clerk . . . a certified copy of the chair['s] order imposing, and the

demand for payment of, such assessment." N.Y. Workers' Comp. Law § 26. Upon such filing, "judgment must be entered in the supreme court by the clerk." *Id.*

Here, Plaintiff asserts that he received no notice or hearing prior to the imposition of the $12,000 penalty on June 2, 2016; that he filed appeals challenging the penalty and notifying the WCB that he had completed the change of ownership paperwork and paid for workers' compensation insurance; and that the WCB's reply was "non-responsive" and ignored these facts. The WCB told Plaintiff it was "unable to consider [his] request," because "[n]o proof of coverage has been received from [his] insurance company," and his NYSIF policy "is still under [his] old Federal ID#." (Dkt. No. 1 at 37). The record before the Court does not indicate whether Plaintiff received notice that he could appeal from this reply. Later, again without any hearing, Plaintiff received a second penalty notice increasing the penalty to $22,000.

In considering the process due, the *Mathews* factors require courts to weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335; *see, e.g., Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). Defendants have not briefed the *Mathews* factors. Even assuming the WCB procedures would generally satisfy due process, because Defendant Rodriguez has not addressed the *Mathews* factors under the facts of this case, and in view of the weighty nature of the penalty imposed on this Plaintiff, and the risk of erroneous deprivation, the Court cannot say that Plaintiff fails to state a plausible procedural due process claim. *Cf. Transcontinental Refrigerated Lines Inc.,* 169 A.D.2d at 716-17 (ruling that employer who had an opportunity to respond to the

WCB's penalty assessment nevertheless had a due process right to a hearing to litigate the jurisdictional issue of its obligation to comply with WCL § 50). Accordingly, Defendant Rodriguez's motion to dismiss is denied.

### 4. Equal Protection

Plaintiff alleges that Defendant Rodriguez "appears to have served some citizens properly" and has "granted rights to some citizens and maliciously denied those rights to Plaintiff denying Plaintiff equal rights." (Dkt. No. 1, at 10). To the extent Plaintiff intends to allege differential treatment on a "class of one" theory, the Complaint fails to state a plausible claim. Under that theory, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). The Complaint contains no allegations concerning other persons who the WCB treated differently.

Nor does the Complaint contain a plausible equal protection claim based on a "selective enforcement" theory. (Dkt. No. 54, at 12–13). That theory requires a showing that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). The discrimination must be intentional or purposeful. *Id.* at 609. There are no allegations that the WCB treated Plaintiff differently based on an impermissible consideration such as race or religion. Moreover, although

Plaintiff alleges "malicious negligence" on the part of the WCB for imposing the penalty, the allegation is conclusory. Accordingly, the equal protection claim is dismissed.

### 5. Conspiracy

Defendant Rodriguez moves to dismiss Plaintiff's claim of conspiracy under 42 U.S.C. § 1985(3). To state a conspiracy claim under § 1985(3), a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). The Complaint contains no allegations or racial or other class-based animus. Accordingly, the § 1985(3) conspiracy claim is dismissed.

### E. RICO

The RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a RICO claim, a plaintiff must plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) the causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (alteration in original). With regard to that first element, a plaintiff asserting a violation of § 1962(c) must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a

result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations marks omitted). "Racketeering activity consists of the commission of a predicate act." *Aronov v. Mersini*, No. 14-cv-7998, 2015 WL 1780164, at *3, 2015 U.S. Dist. LEXIS 51695, at *7 (S.D.N.Y. Apr. 20, 2015). The RICO statute sets forth a list of acts that qualify as racketeering activity and includes "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than a year" as well as "any act which is indictable under [inter alia] . . . [18 U.S.C] section 1341 (relating to mail fraud), 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)." 18 U.S.C. § 1961(1)(B); *see Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) ("Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.'").

At the outset, Plaintiff's RICO claims against Defendants NYSIF and WCB, and Defendants Rodriguez and Madoff in their official capacities must be dismissed. "[I]t is well settled that a government entity cannot form the requisite intent to be liable for any RICO predicate violation." *N.Y. State Prof'l Process Servers Ass'n, Inc. v. City of New York*, No. 14-cv-1266, 2014 WL 4160127, at *11, 2014 U.S. Dist. LEXIS 115137, at *30 (S.D.N.Y. Aug. 18, 2014), *aff'd sub nom. Clarke v. de Blasio*, 604 F. App'x 31 (2d Cir. 2015). For this reason, "a civil RICO claim cannot be brought against a government entity or officials acting in official capacities." *Id.*

Defendants Mersmann and Pioneer move to dismiss Plaintiff's RICO claim on the ground that the Complaint fails to sufficiently allege an enterprise, predicate acts, and damages. (Dkt. No. 7-2, at 10–17). Read liberally, the Complaint alleges that Defendants—WCB, Rodriguez, NYSIF, Madoff, Pioneer, and Mersmann—formed an enterprise for the purpose of converting to their own use "the initial credit balance on Plaintiff's NYSIF account and the monies Plaintiff

paid for premiums," "maliciously denying Plaintiff a change in workman's compensation policy Federal tax number and . . . denying the existence of" Plaintiff's workers' compensation coverage, fraudulently imposing on Plaintiff $22,000 in penalties, and demanding an additional $4,840 from Plaintiff in the form of a "22% debt collection fee." (Dkt. No. 1, at 13, 40). The Complaint asserts the following predicate acts: mail and wire fraud (18 U.S.C. §§ 1341, 1343) and extortion (18 U.S.C. § 1951).[8] (Dkt. No. 1, at 11–14).

Even assuming the Complaint adequately alleges an enterprise, "[f]or RICO purposes, simply establishing the presence of an enterprise is not enough." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004). A plaintiff "must also allege that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Id.* at 175–76 (alterations in original) (quoting 18 U.S.C. § 1962(c)). This means that the RICO defendant must have "participated in the operation or management of the enterprise." *Id.* at 176 (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994)). "In this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear," "especially at the pleading stage." *Id.* at 176. "Ultimately, however, it is clear that the RICO defendant must have played "*some* part in directing [the enterprise's] affairs." *Id.* (alteration in original) (quoting *De Falco v. Bernas*, 244 F.3d 286, 310 (2d Cir. 2001)). "Under this standard, a person may not be held liable merely for taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'" *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 415

---

[8] As Defendants Mersmann and Pioneer correctly note, (Dkt. No. 7-2, at 9–10), there is no private right of action under the mail or wire fraud provisions. *See Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) ("[N]o private right of action exists under either 18 U.S.C. § 1341 or 18 U.S.C. § 1343." (citing *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989))). Accordingly, to the extent the Complaint asserts such claims, they are dismissed.

(E.D.N.Y. 2017) (quoting *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004)).

Here, the Complaint's sole allegation with respect to the conduct and participation of Defendants Mersmann and Pioneer in the alleged enterprise is that they provided debt collection services that aided in the perpetration of the allegedly fraudulent scheme. The provision of such services does not constitute "conduct or participation" within the meaning of RICO. *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) ("Rosner's sole allegation is that BoC provided banking services that aided in the perpetration of the fraudulent scheme. Regardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise."); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself."). The Complaint therefore fails to state a plausible claim for relief under RICO against Defendants Mersmann and Pioneer.

### F.    FDCPA

In their reply papers, Defendants Mersmann and Pioneer note that "Plaintiff's Opposition attempts to argue that Defendants violated the FDCPA," and they argue that such a claim should be rejected as it was raised for the first time in opposition to their motion. (Dkt. No. 17, at 5). While Defendants are correct that Plaintiff's first reference to the FDCPA is in his opposition papers, (*see* Dkt. No. 16, at 4), the Complaint appears to allege facts sufficient to state a claim under the FDCPA.

Under the FDCPA, "a debt collector is required, shortly after making initial contact with a consumer regarding the collection of a debt, to provide the consumer with a written notice containing, among other things, 'a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.'" *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015) (quoting 15 U.S.C. § 1692g(a)(3)). "If the consumer so notifies the debt collector that the debt is disputed, 'the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of [the verifying material] is mailed to the consumer.'" *Id.* (quoting 15 U.S.C. § 1692g(b)).

Here, the Complaint alleges that Plaintiff notified Pioneer that he "dispute[d] the validity of the debt" and requested that Pioneer send "verification," and that Pioneer failed to do so. (Dkt. No. 1, at 11). Because these factual allegations are sufficient, the Complaint's failure to cite the FDCPA is not fatal. *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997) (stating that the "failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of a claim," as "[f]actual allegations alone are what matters" (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988))).

Because there are no allegations in the Complaint concerning Defendant Mersmann's involvement in the alleged violation of the FDCPA—other than that he is president of Pioneer—Plaintiff has failed to allege individual liability under the FDCPA. "For a court to find an individual to be liable under the FDCPA . . . the individual must have been personally involved in the unlawful collection effort." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 373 (D. Conn. 2012) (quoting *Heyward v. PRA Recovery, Inc.*, No. 10-cv-2030, 2011 WL

3134985, at *2, 2011 U.S. Dist. LEXIS 51270, at *6–7 (D. Conn. May 13, 2011)). Accordingly, Plaintiff's FDCPA claim may proceed against Pioneer but is dismissed as to Mersmann.

### G.   Personal Injury

The State Defendants seek dismissal of Plaintiff's personal injury claim on the grounds that any such claim must be brought in the New York Court of Claims and that Plaintiff fails to allege that their actions proximately caused his injuries. (Dkt. No. 13-1, at 17). The New York Court of Claims "has exclusive jurisdiction of claims against the State and its agencies." *Baisley v. Town of Kent*, 111 A.D.2d 299, 300 (2d Dep't 1985). Thus, all damages claims against the NYSIF and the WCB as state agencies, and against Defendants Madoff and Rodriguez in their official capacities,[9] are dismissed. *See* N.Y. Ct. Cl. Act § 10(3) (requiring requires a plaintiff to file in the Court of Claims a "claim to recover damages for injuries to property or for personal injuries caused by the negligence or unintentional tort of an officer or employee of the state while acting as such officer or employee"); *Jenkins v. Morris*, No. 11-cv-4178, 2011 WL 3877057, at *3, 2011 U.S. Dist. LEXIS 98244, at *8 (E.D.N.Y. Sept. 1, 2011) ("If plaintiff were suing state employees in their official capacities, such a suit could only be sought in the New York Court of Claims."). Accordingly, the State Defendants' motion is granted.

## V.   AMENDING THE COMPLAINT

In recognition of Plaintiff's status as a pro se litigant and because it seems possible that Plaintiff may be able to assert cognizable claims with better pleading, leave to file an amended complaint within thirty (30) days of the date of this Order is granted. In any amended complaint, Plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged

---

[9] There are no allegations that would suggest Defendants Madoff or Rodriguez acted in their individual capacities.

wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI.    CONCLUSION

For these reasons, it is

**ORDERED** that the Clerk of the Court is directed to add the New York State Insurance Fund, the Worker's Compensation Board, and Pioneer Credit Recovery, Inc., as defendants in this action; and it is further

**ORDERED** that the motions to dismiss (Dkt. Nos. 7, 13) are granted as follows:

- All claims against Defendants NYSIF, Madoff, the WCB, and Mersmann are dismissed.

- All claims against Defendant Rodriguez in her individual capacity are dismissed.

- The § 1983 claims against Defendants Pioneer and Mersmann are dismissed.

- The RICO claim is dismissed.

- The § 1985(3) conspiracy claim is dismissed.

- The equal protection claim is dismissed.

- The personal injury claim is dismissed.

It is further **ORDERED** that the motions to dismiss (Dkt. Nos. 7, 13) are otherwise

**DENIED** and that the due process claim against Defendant Rodriguez in her official capacity

and the FDCPA claim against Defendant Pioneer may proceed; and it is further

     **ORDERED** that Plaintiff may file an amended complaint **within thirty (30) days** of the

date of this Memorandum-Decision and Order; and it is further

     **ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with

the Local Rules.

     **IT IS SO ORDERED.**

Dated:  November 5, 2018
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge