**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT CRAIG CASSIDY d/b/a MOUNTAIN TIME
AUCTIONS, ANTIQUES, AND MATTRESSES,

                         Plaintiff,

                                  8:18-cv-00394 (BKS/DJS)

v.

ERIC MADOFF, Executive Director, New York State
Insurance Fund; NEW YORK STATE INSURANCE
FUND; TITIAN DION, personally and as an employee of
New York State Insurance Fund; CLARISSA M.
RODRIGUEZ, Chair, New York Worker's Compensation
Board; NEW YORK WORKER'S COMPENSATION
BOARD; FREIDA FOSTER; ELLEN O. PAPROCKI;
MARK HIGGINS; LOREN LOBBAN; SAMUEL G.
WILLIAMS; LINDA HULL; FREDERICK M. AUSILI;
STEVEN A. CRAIN; MARK R. STASKO, personally and
as commissioners of the New York Worker's
Compensation Board; J.J. DOE1; J.J. DOE2; and J.J.
DOE3, personally and as members of Penalty Review Unit
(NEG) New York Worker's Compensation Board,

                         Defendants.

**Appearances:**

*Plaintiff pro se:*
Robert Craig Cassidy
Rutland, Vermont 05701

*For the State Defendants:*
Letitia James
Attorney General of the State of New York
Brian W. Matula
Assistant Attorney General
The Capitol
Albany, New York 12224-0341

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff pro se Robert Craig Cassidy, d/b/a Mountain Time Auctions, Antiques, and Mattresses, brings this action against Defendants New York State Insurance Fund ("NYSIF"); the Executive Director of the NYSIF, Eric Madoff; an employee of the NYSIF, Titian Dion; the New York Workers' Compensation Board ("WCB"); the Chair of the WCB, Clarissa M. Rodriguez; Commissioners of the WCB, Freida Foster, Ellen O. Paprocki, Mark Higgins, Loren Lobban, Samuel G. Williams, Linda Hull, Frederick M. Ausili, Steven A. Crain, and Mark R. Stasko; and members of the WCB Penalty Review Unit, J.J. Doe1, J.J. Doe2, and J.J. Doe3. (Dkt. No. 24). Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of the Equal Protection and Procedural Due Process Clauses of the Fourteenth Amendment and the Excessive Fines Clause of the Eighth Amendment.[1] (Dkt. No. 24). Presently before the Court is Defendants' motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 47). Plaintiff opposes Defendants' motion, (Dkt. No. 54), and moves to strike the affidavits and exhibits Defendants submitted in support of their motion, (Dkt. No. 50, 58). Also before the Court are Plaintiff's motion for a temporary restraining order and preliminary injunction, which Defendants oppose. (Dkt. Nos. 59, 60, 62). For the reasons that follow Defendants' motion to dismiss is granted in part and denied in part and Plaintiff's motions are denied.

---

[1] Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g, were previously dismissed. *Cassidy v. Madoff ("Cassidy II")*, No. 18-cv-00394, 2019 WL 3453937, 2019 U.S. Dist. LEXIS 127190 (N.D.N.Y. July 31, 2019).

## II.     BACKGROUND[2]

In 2015, Plaintiff purchased Mountain Time Furniture, a "small auction house" in Ticonderoga, New York, from Richard Harker. (Dkt. No. 24, at 8). On August 19, 2015, "Plaintiff filed a new business registration certificate," renaming the business "Mountain Time Auctions, Antiques, and Mattresses, a personal proprietorship." (*Id.*).

On or about September 10, 2015, the NYSIF mailed a bill regarding workers' compensation to "Richard D Harker DBA Mountain Time Furniture," "Policy Number A 1351 815-4." (*Id.* at 27). The bill reflected "Workers' Compensation Activity Period – 8/11/2015 to 09/10/2015" and indicated a credit of $210.84. (*Id.*). Before mailing the bill back to NYSIF, Plaintiff crossed out "Richard D Harker DBA Mountain Time Furniture" and wrote in "Robert Craig Cassidy DBA Mountain Time Auctions"; Plaintiff also wrote that he was "the new owner of the business and building . . . and asked NYSIF to update their records and change workman's compensation policy ownership." (*Id.* at 9, 27).

In a letter to Plaintiff dated October 29, 2015, NYSIF employee Titian Dion wrote that NYSIF had received Plaintiff's notification that "Richard D Harker DBA" was now "operating under the name" "Robert Craig Cassidy DBA" with respect to "WC Policy: 1351815-4." (*Id.* at 28). Dion advised that "[i]n order that you may be properly protected under the policy, it is essential that you fill out the enclosed Transfer of Interests forms," including an "Assignment of Interest Agreement," and provide, inter alia, "the name of the new firm, INCLUDING THE FEDERAL ID NUMBER." (*Id.* at 9, 28). Dion indicated that "[u]pon receipt of this form

---

[2] All facts are taken from the Amended Complaint and its exhibits and are assumed to be true for purposes of the parties' motions. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

properly completed, we will issue an endorsement effecting the transfer of the policy, unless the conditions are such that the interest cannot be transferred." (*Id*. at 28).

On November 3, 2015, Plaintiff completed and mailed the "Assignment of Interest Agreement," indicating that on August 19, 2015, "WC Policy: 1351815-4," "is hereby assigned to" "Robert Craig Cassidy D/B/A Mountain Time Auctions, Antiques, Mattresses," and that the Federal ID number was 47-5236656. (*Id*. at 9, 29).[3] The second page of the form requests "information regarding the entity for which you have requested coverage." (*Id.* at 30). Plaintiff provided the policy number, the name of his business—"Mountain Time Auctions," the business address, number of employees—2, amount of annual payroll—$9,000, and Plaintiff's name and home address. (*Id.*). The form states: "The State Insurance Fund shall not be bound by the assignment of interest agreement as herein set forth, unless it consents thereto in writing, such consent to be evidenced by an endorsement which shall be attached to and form part of WC Policy: 1351815-4." (*Id.* at 29). There is no indication in the Amended Complaint that the NYSIF issued an endorsement.

The NYSIF issued additional bills to "Richard D Harker DBA Mountain Time Furniture" on December 10, 2015 ($246.56), March 10, 2016 ($300.70), and May 10, 2016 ($220.46) for "workers' compensation activity periods" November 11, 2015 to March 10, 2016 and April 12, 2016 to May 10, 2016. (*Id*. at 33–39). The March 10, 2016 bill was for the renewal of the workers' compensation policy for the April 2016–April 2017 time period. (*Id.* at 10, 34). Plaintiff paid these bills[4] and the NYSIF accepted his payments. (*Id.* at 10).

---

[3] Plaintiff's insurance agent and Harker also sent Assignment of Interest Agreements to NYSIF. (Dkt. No. 24, at 9).

[4] On the May 10, 2016 bill, Plaintiff checked the box indicating a change of correction of name or address and entered "Robert Craig Cassidy DBA Mountain Time Auctions." (*Id.* at 35–36).

On or about March 11, 2016, Plaintiff communicated via email with William Farnan at NYSIF concerning the filing of an "Employers' Report of Injury" for an "incident involving [employee's] accident of 10/28/2015." (*Id*. at 31). Farnan provided a "Loss ID#" and noted that the policy number was "13518154." (*Id*.). This claim was "processed." (*Id*. at 9).

At one point, the Amended Complaint does not indicate when, Plaintiff spoke with Dion at the NYSIF on the telephone. (*Id.* at 9). Plaintiff alleges that Dion "for nine months had maliciously denied Plaintiff a change of Federal tax number even as his agency took Plaintiff's funds and refused Plaintiff's attempts to change Harker's Federal account number to Plaintiff's Federal number" and that he "failed to communicate his reasons for sitting on Plaintiff's policy change, terrified Plaintiff's insurance agent to the point where she resigned from Plaintiff's account, and never sent Plaintiff a policy cancellation notice." (*Id.* at 11).

On June 2, 2016, the WCB issued Plaintiff a "Notice of Penalty Pursuant to Section 52(5) of the Worker's Compensation Law," ("WCL"), based on Plaintiff's purported failure to procure workers' compensation insurance coverage and assessed a penalty in the amount of $12,000. (*Id.* at 42). The Notice reflects a Federal Tax ID number of 475236656 and states:

> The Board has determined that:
>
> - Since 09/30/2015, the employer was required to provide workers' compensation insurance coverage for its employees.
> - The Board has no record of coverage for the period 09/30/2015 to the present.
>
> Therefore the [WCB] has determined that the employer is in violation of Workers' Compensation Law Section 52(5) for the period 09/30/2015 to the present. A penalty has been assessed for each 10 day period of non-compliance.
>
> . . .
>
> The Board strongly recommends that you request a review of this penalty if you were not required to have a policy. You should also

request a review, to possibly reduce the penalty amount, even if you were required to have a policy.

(*Id*.). The WCB did not hold a hearing, receive evidence, employ an "unbiased referee," or provide "written findings of fact" before assessing this penalty. (*Id*. at 10–11). Plaintiff notes that the "very day [the WCB] fined Plaintiff $12,000.00 for not having workman's compensation insurance, Plaintiff's premium check [to NYSIF] for May 28, 2016 cleared Plaintiff's bank account." (*Id*. at 11).

In a letter to the WCB dated July 1, 2016 regarding the $12,000 penalty, Plaintiff wrote:

> We formally protest and appeal the penalty levied without evidentiary hearing on this matter.
>
> This business has been in compliance since April 10, 2015, as the attached "Exhibit One" shows.
>
> Premiums have been paid and no less than three [Assignment of Interest] forms have been filed since September 2015.
>
> . . .
>
> The [NYSIF] failed and neglected to process the change of address on Policy A 1351815-4 on the March 10, 2016 bill which I personally paid on April 5, 2016 . . . .
>
> I marked the remittance coupon change of address box with an "x" [and] further filled out the change information . . . on the coupon back.
>
> Once again on the May 10, 2016, billing . . . NYSIF failed and neglected to change the address, nor did NYSIF notify me why it did not do so. The $220.46 amount due was paid by me . . . .
>
> I submitted [the Assignment of Interest Agreements] to the Board. As these were not returned to me . . . I have to presume NYSIF received them and ignored them.
>
> . . .
>
> I strongly urge the Board to rescind the penalty in total as I have carried Workman's Compensation in force the entire time I have managed this business.

(*Id.* at 43–46).

On July 19, 2016, Plaintiff submitted a "Payroll Report" for the time period April 10, 2016 to June 23, 2016 to the NYSIF. (*Id.* at 10, 30). On the form, Plaintiff crossed out "Richard D Harker DBA" and "Mountain Time Furniture" and wrote in "Robert Craig Cassidy, DBA" and "Mountain Time Auctions, Antiques, and Mattresses." (*Id.* at 40). The form references policy number A 1351815-4, and next to "Federal Tax ID #" is written 47-5236656. (*Id.*). On the form, Plaintiff reports two part-time employees and states: "Please note DBA + firm name changes on page 1." (*Id*. at 41).

In a letter to Plaintiff dated October 7, 2016, the Penalty Review Unit of the WCB wrote that it had reviewed his correspondence and determined that he was "subject to the coverage requirements of the WCL" but that:

> the Board is unable to consider your request for re-determination for the following reason:
>
> The employer is currently not in compliance with the requirements for coverage under the [WCL] for the above period. No proof of coverage has been received from your insurance company. Your policy with State Insurance Fund is still under your old Federal ID#.
>
> Please be advised that if you are subject to the [WCL] and have not obtained Workers Compensation coverage, penalties will be issued for all periods in which coverage was not in effect.
>
> Please advise your NYS Workers' Compensation Insurance carrier. [sic] THE STATE INSURANCE FUND to submit your coverage information electronically. This carrier should report this policy using your correct Federal ID# 475233656.

(*Id.* at 47 (emphases omitted)). The Federal Tax ID in the letter is different from the number Plaintiff had included on all prior correspondence with NYSIF, which was 47523**6**656.[5] (*See,*

---

[5] There is no indication in the Amended Complaint whether the number in the WCB letter contains a typographical error or what impact, if any, these two different Federal Tax ID numbers had on the issues in this case.

*e.g.*, *id*. at 32). The letter indicates that the "Penalty Amount" had increased to $18,000. (*Id.* at 47).

On or about December 21, 2016, Plaintiff received a statement from the WCB Bureau of Compliance "raising the penalty to $22,000.00." (*Id.* at 6, 50). The statement advises that: "Past due accounts are subject to referral to collection agencies (along with a 22 percent collection fee) and the filing of a judgement." (*Id.* at 50). The statement includes payment instructions, indicates that "items on this statement are payable upon receipt," and advises that the "Finance Office Address listed at the bottom of this page is for payment only" and that "[a]ny correspondence should be mailed to" the WCB Assessment Unit. (*Id.*).

On or about February 14, 2018, Plaintiff received another penalty notice from the WCB reflecting a total amount due of $22,500; it is otherwise identical to the December 21, 2016 notice. (*Id.* at 54). This notice included a "Billing Statement," which advises that it "lists all outstanding penalties issued against you for non-compliance with the [WCL]: Violation found under Section 52(5)," and states that the penalty is "for not having Workers' Compensation Insurance" from September 2015 to December 2016. (*Id.* at 55). It also states that: "the Total Due . . . includes $22,500.00 net due in judgments obtained in New York State Supreme Court." (*Id.*). Plaintiff's "gross payroll for the quarter ending December 31, 2016 was less than $2,000" and the WCB's action "put Plaintiff out of business." (*Id.* at 6).

## III.    PROCEDURAL HISTORY

As relevant here, in its prior decision, the Court found that to the extent Plaintiff sought prospective injunctive relief, sovereign immunity did not bar, and his due process claim could proceed against, Defendant Rodriguez as the Complaint adequately alleged that Defendant Rodriguez, as chair of the WCB, had some connection with the enforcement of the penalty at

issue. *Cassidy v. Madoff ("Cassidy I")*, No. 18-cv-00394, 2018 WL 5792786, 2018 U.S. Dist. LEXIS 188929, at *18 (N.D.N.Y. Nov. 5. 2018). The Court dismissed all claims against Defendants NYSIF, Madoff, and WCB as barred by sovereign immunity, and the equal protection claim for failure to state a claim. *Id.* 2018 WL 5792786, at 6–7, *10, 2018 U.S. Dist. LEXIS 188929, at *16–19, *28–29. In recognition of Plaintiff's status as a pro se litigant, however, the Court granted Plaintiff leave to file an amended complaint. *Id.* 2018 WL 5792786, at *13, 2018 U.S. Dist. LEXIS 188929, at *37–38. On December 4, 2018, Plaintiff filed the Amended Complaint. (Dkt. No. 24). In the Amended Complaint, Plaintiff renews his claims against the NYSIF, Madoff, and the WCB, and adds the WCB commissioners and Dion as Defendants.[6] (*Id.*).

## IV. MOTIONS TO STRIKE

In support of their motion to dismiss, Defendants submitted two affidavits by Joseph Slater, a senior attorney at the WCB, (Dkt. Nos. 47-3, 55-1), and several exhibits. (Dkt. Nos. 47-2, 47-4, 47-5, 47-6, 55-2). Plaintiff moves to strike these affidavits and exhibits.[7] (Dkt. Nos. 50, 58).

### A. Defendants' Affidavits and Exhibits

In his first affidavit, Slater states that the June 2, 2016, WCB penalty notice Plaintiff attached to the Amended Complaint, (Dkt. No. 24, at 42), "is not the complete document"

---

[6] Plaintiff also brings claims against three Doe defendants, as members of the Penalty Review Unit. (Dkt. No. 23, at 1). The viability of these claims is not addressed in the present motion to dismiss. The Court therefore does not address them. Since service cannot be effected on a "Doe" defendant, if Plaintiff wishes to pursue the claims against these defendants, he must take reasonable steps through discovery to ascertain his or her identity. Upon learning the identity of these individuals, Plaintiff must seek permission to amend his Amended Complaint to properly name him or her as a defendant in this case. If the Plaintiff fails to ascertain the identity of any Doe defendant so as to permit the timely service of process, this action will be dismissed as against that individual.

[7] Plaintiff also moves "for a more definitive statement" and requests that the Court order Defendants to provide certain materials. (Dkt. No. 50, at 2, 4; Dkt. No. 58, at 5). To the extent these are discovery requests, Plaintiff may raise them in discovery proceedings before United States Magistrate Judge Daniel J. Stewart.

because it omitted the "second page of the notice" as well as a form that was sent with the notice "that is to be used for the employer to request a review of the penalty." (Dkt. No. 47-3, ¶¶ 3–6). Slater attached these documents to his affidavit. (Dkt. Nos. 47-4, 47-5). The "second page of the notice" states that: "Failure to secure proper Workers' Compensation insurance and pay all accrued penalties may result in further collection activities by the Board and its collection agencies including the filing and execution of judgment," and that "[t]he Board strongly recommends you request a review of this penalty" and that "[i]f you had a Workers' Compensation policy . . . you may request a rescission of all or part of the penalty based on those facts." (Dkt. No. 47-4, at 2). It further advises that "a valid workers' compensation policy must be obtained before the Board will consider any reduction of this penalty." (*Id.*). The form for requesting review appears to have been completed by Plaintiff. (Dkt. No. 47-5, at 1). Slater also attached the "Final Notice" to his affidavit. (Dkt. No. 47-6). It is dated November 28, 2017, reflects a balance due of $22,500.00 for "Failure to Carry Workers' Comp Ins 09/30/2015-12/31/2016," and states: "If payment is not received immediately, judgment will be filed and the employer is subject to seizure of assets, both business and personal, without further notice from the Board." (Dkt. No. 47-6, at 1). Finally, Slater states in his affidavit that a "judgment was filed [against Plaintiff] approximately four (4) months later on March 30, 2018." (Dkt. No. 47-3, ¶ 9).

Plaintiff moved to strike the affidavits and exhibits. (Dkt. No. 50). Plaintiff does not dispute receiving the "second page of the notice," but explains that he did not attach it to the Amended Complaint because he regarded it as "'boiler plate' as it was not related to any point Plaintiff chose to make in" his pleading. (Dkt. No. 54, at 11). Plaintiff states that he "'failed to attach' the so-called Final Notice to his Amended Complaint simply because Plaintiff never received that document." (Dkt. No. 50, at 2). Plaintiff also challenges Slater's assertion that there

is any judgment pending against him. (*Id.*). Plaintiff states that he obtained a notarized letter from the Essex County Clerk dated July 16, 2019 stating that "No judgments or liens were found to be filed in this Office against Robert Craig Cassidy or Mountain Time Auctions." (*Id.* at 2, 6–7). Plaintiff also obtained a letter from the Vermont Superior Court "[i]n the unlikely event that the WCB filed its 'judgment' in Vermont," stating that no judgments had been entered against him in Vermont. (*Id.* at 3, 15).

In response to Plaintiff's motion to strike, Defendants submitted a second affidavit from Slater, stating that after reviewing Plaintiff's motion, he "attempted to obtain a copy of the judgment which I understood to have been processed by our Judgment Unit" and learned that the court clerk had returned the judgment to the Judgment Unit "for correction," that the "return of the judgment was never documented" internally, and "no judgment has been entered."[8] (Dkt. No. 55-1, ¶¶ 8–11). Plaintiff replied with a second motion to strike, attacking Slater's second affidavit and claiming that, based on Slater's first affidavit asserting that there was a judgment, and his second acknowledging that no judgment has been filed, Defendants have "borne false witness to the Court." (Dkt. No. 58).

**B.  Standard of Review**

In general, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting Fed. R. Civ. P. 12(d)). "Even where a document is considered 'integral to the

---

[8] Because the parties agree that no judgment has been filed in connection with the penalty in this case, the Court denies Defendants' motion to the extent it is based on the *Rooker-Feldman* doctrine. (Dkt. No. 47-1, at 25–27).

complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *Id.* (internal quotation marks omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus.*, 949 F.2d at 48. In such circumstances, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### C. Analysis

Slater's affidavits are documents outside the Amended Complaint and must be excluded. *See Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."). As Plaintiff has actual notice of the second page of the June 2, 2016, notice, (Dkt. No. 54, at 11), and the first page of the notice is attached to the Amended Complaint, (Dkt. No. 24, at 42), the Court may consider the second page of the notice in ruling on the pending motion. *Cortec Indus.*, 949 F.2d at 48. Plaintiff has not, however, addressed the "attached form," (Dkt. No. 47-5, at 1), which, according to Slater, was provided to Plaintiff together with the June 2, 2016, penalty notice. (Dkt. No. 47-3, ¶ 6). In light of Plaintiff's status as a pro se litigant and because the "attached form" is inconsequential to the pending motion, the Court disregards it. As to the "Final Notice," (Dkt. No. 47-6, at 1–2), even if it could be

considered integral to the Amended Complaint, because Plaintiff disputes receiving it, it would be inappropriate for the Court to consider it without converting this motion to one for summary judgment, which it declines to do. *See Nicosia*, 834 F.3d at 231 ("If . . . there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind."). Thus, the Court considers the second page of the June 2, 2019 notice, but otherwise disregards Mr. Slater's affidavits and the other exhibits Defendants submitted in support of their motion. The Court, however, declines to strike these documents from the record. Accordingly, Plaintiff's motions to strike are denied.

## V.     MOTION TO DISMISS

### A.     Standard of Review

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### B.      Analysis

#### 1.      Sovereign Immunity

Sovereign immunity bars a suit in federal court against a state, absent the state's consent to suit or congressional abrogation of immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). "New York has not waived its immunity, nor has Congress abrogated it." *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir. 2017) (citation omitted). "A claim [for damages] against state officials in their official capacities is likewise barred." *Id*. Thus, with the exception of the claim for prospective injunctive relief against Defendant Rodriguez, discussed below, to the extent Plaintiff seeks damages against the NYSIF, the WCB, the WCB Penalty Review Unit, and the individual Defendants in their official capacities, his claims are dismissed. *See Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) (agreeing "with the district court that the [NYSIF] is a 'state agency' entitled to sovereign immunity"); *Palma v. Workers Comp. Bd. of N.Y.*, 151 F. App'x 20, 21 (2d Cir. 2005) ("The [Workers Compensation] Board, as an agency of the New York State government, is entitled to sovereign immunity under the Eleventh Amendment.").

The Court previously allowed Plaintiff's request for prospective injunctive relief against Rodriguez, as Chair of the WCB, to proceed. *See Cassidy I*, 2018 WL 5792786, at *7, 2018 U.S. Dist. LEXIS 188929, at *18. Allowing this claim to proceed against the WCB Commissioners, in addition to Rodriguez, however, would be duplicative. Those claims are, accordingly, dismissed. Further, like the original Complaint, *see id.*, the Amended Complaint does not appear to seek prospective injunctive relief against the NYSIF Defendants. Accordingly, with the exception of the official capacity claim against Defendant Rodriguez, all official capacity claims are dismissed.

## 2. Absolute Immunity

Defendants argue that the claims against the WCB Commissioners in their individual capacities for their "quasi-judicial acts," must be dismissed on the ground of absolute immunity. (Dkt. No. 47-1, at 6). "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (collecting cases). "[Absolute] immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (collecting cases); *see also Durant v. N.Y. City Housing Auth.*, 12-cv-0937, 2012 WL 928343, at *2, 2012 U.S. Dist. LEXIS 36919, at *4 (E.D.N.Y. Mar. 19, 2012) ("This absolute judicial immunity has been further applied to non-federal administrative hearing officers.").[9] "[A]bsolute immunity is of a 'rare and exceptional character,'" *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 46 (2d Cir. 2017) (quoting *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986)), and "courts must examine the invocation of absolute immunity on a case-by-case basis," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (citing *DL Capital Grp. v. Nasdaq Stock Mkt. Inc.*, 409 F.3d 93, 97 (2d Cir. 2005)). A court "must conduct 'some factual inquiry' to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." *Victory v. Pataki*, 814 F.3d 47, 66 (2d Cir. 2016) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). "[T]he party asserting immunity bears the burden of demonstrating its entitlement to it." *Id.* (citing *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001)).

---

[9] Copies of the unpublished decisions cited in this decision will be mailed to Plaintiff in light of his pro se status.

While a WCB commissioner may function in a manner comparable to a judge in some instances, *see, e.g., Levitant v. Workers Comp. Bd. of New York*, No. 16-cv-6990, 2018 WL 1274734, at *5, 2018 U.S. Dist. LEXIS 39096, at *12–13 (S.D.N.Y. Mar. 8, 2018) (finding doctrine of judicial immunity barred the plaintiff's § 1983 claims against WCB Commissioners where claims arose from the WCB's determinations and hearings concerning the plaintiff's application for workers' compensation benefits), Defendants have not, as is their burden, addressed the role of a WCB Commissioner regarding the "function in question" in this case. Defendants have not cited any regulatory provisions illuminating the WCB's procedures with respect to the assessment of penalties under WCB § 52(5), and nothing before the Court explains the Board's process for determining the initial $12,000 penalty. Nor have Defendants cited any statutory or regulatory authority concerning the WCB's duties or procedures with respect to re-determinations. Finally, Defendants have not addressed whether the Commissioners' actions or responsibilities in this case were administrative, as opposed to judicial. *Victory*, 814 F.3d at 65–66 ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." (quoting *Burns v. Reed*, 500 U.S. 478, 486, (1991))); *King v. Simpson*, 189 F.3d 284, 287–88 (2d Cir. 1999) ("In determining whether an official is entitled to absolute immunity, we must take a functional approach and look to the particular acts or responsibilities that the official performed."). Here, Defendants assert only that absolute immunity is required because the Amended Complaint seeks "compensation from [the WCB commissioners] for their role in failing to reverse a penalty determination, [and] this type of allegation would clearly constitute an allegation concerning quasi-judicial acts." (Dkt. No. 47-1, at 7). This conclusory allegation is, however, insufficient to warrant dismissal at this early stage

of the case. *See*, *e.g.*, *Marshall v. New York State Public High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288–92 (W.D.N.Y. 2019).

### 3.      Breach of Contract – NYSIF Defendants

Defendants argue that all claims against the NYSIF Defendants must be dismissed because "[t]here is no obligation in the Amended Complaint establishing any obligation of NYSIF to act on behalf of Plaintiff to do anything." (Dkt. No. 47-1, at 9). This cursory argument provides no basis for dismissal. They further argue that that if such an obligation existed, "it would have its roots in contract, and specifically, in the form of an insurance policy." (*Id.* at 8–9). As Defendants note, claims against the NYSIF for money damages, such as a breach of contract claim, must be brought in the New York Court of Claims. (Dkt. No. 47-2, at 12); *see Gollomp v. Spitzer*, 568 F.3d 355, 358 n.2 (2d Cir. 2009) ("The New York Court of Claims is the exclusive forum among New York's state courts for litigating claims for money damages against New York State."); *see also D'Angelo v. State Ins. Fund*, 48 A.D.3d 400, 402 (2d Dep't 2008) (finding the trial court erred in allowing the plaintiffs to amend their complaint to add a breach of contract claim against the NYSIF, explaining that the trial court lacked subject matter jurisdiction because "[t]he State Insurance Fund is a state agency, and, consequently, claims against it for money damages must be litigated in the Court of Claims"). Plaintiff, however, does not appear to assert a breach of contract claim in the Amended Complaint. Accordingly, to the extent Defendants move to dismiss a breach of contract claim against the NYSIF, their motion is denied as moot.

### 4.      Statute of Limitations

Defendants argue that Plaintiff's claims "should be dismissed on the basis of the expiration of the statute of limitations." (Dkt. No. 47-1, at 11). In making this argument,

Defendants rely on the provisions set forth in the WCL, which provide "thirty days" to seek review of a penalty determination, N.Y. Workers' Comp. Law § 52(5), and thirty days to appeal to the Appellate Division, Third Department. N.Y. Workers' Comp. Law § 23. There are, however, no state law claims, and Plaintiff's § 1983 claims are governed by a three-year statute of limitations. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). According to the Amended Complaint, the incidents at issue occurred in 2016. (Dkt. No. 24). As Plaintiff filed this action on April 2, 2018, (Dkt. No. 1), his claims are timely. Accordingly, Defendants' motion to dismiss based on a statute of limitations violation is denied.

### 5. Equal Protection

Defendants argue that the Amended Complaint fails to adequately plead a violation of the Equal Protection Clause. (Dkt. No. 47-1, at 12–13). The Court previously dismissed Plaintiff's equal protection claim, finding the original Complaint failed to allege differential treatment based on a "class of one" theory or a plausible equal protection claim based on "selective enforcement." *Cassidy I*, 2018 WL 5792786, at *10, 2018 U.S. Dist. LEXIS 188929, at *28–29. Although the Court granted leave to amend, and the Amended Complaint alleges a violation of the Equal Protection Clause, because the Amended Complaint contains no new allegations, Plaintiff's equal protection claim is dismissed for the reasons stated in the Court's previous Memorandum-Decision and Order. *Id.*

### 6. Due Process Claim

Defendants move to dismiss the due process claims against the WCB and NYSIF Defendants, arguing that the Amended Complaint fails to allege a violation of the Fourteenth Amendment's Procedural Due Process Clause. (Dkt. No. 47-1, at 14–22). Plaintiff opposes Defendants' motion.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."). As the Second Circuit has observed, "the Fourteenth Amendment guarantee of due process is fully applicable to adjudicative proceedings conducted by state and local government administrative agencies." *N.Y. State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001).

"To succeed on a procedural due process claim, 'a plaintiff must first identify a property right, second show that the state has deprived him [or her] of that right, and third show that the deprivation was effected without due process.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Id.* (quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011)).

"Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Under certain circumstances, however, the "lack of such pre-deprivation process will not offend the constitutional guarantee of due process, provided there is sufficient post-deprivation process." *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (alterations and internal quotation marks, and citation omitted). For example, "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the

government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." *DiBlasio*, 344 F.3d at 302. Thus, "[w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.*; *see also HANAC*, 101 F.3d at 880 ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, *ipso facto*, satisfy due process.").

### a. WCB Defendants – Generally

Plaintiff asserts that the WCB Defendants failed to provide any pre-deprivation process before imposing the penalties, and that the post-deprivation process was insufficient. (Dkt. No. 54, at 10). Defendants contend that a pre-deprivation hearing was not required in this case and that the post-deprivation procedure satisfies due process. (Dkt. No. 47-1, at 18–19).

"Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *DiBlasio*, 344 F.3d at 302. "However, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Spinelli*, 579 F.3d at 170 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "The timing and nature of the required hearing will depend on appropriate accommodation of the competing

interests involved.'" *Id.* (quoting *Krimstock v. Kelly*, 306 F.3d 40, 51–52 (2d Cir. 2002) (internal quotation mark omitted)). To determine what process is due, courts must balance the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Here, the Amended Complaint alleges that the WCB provided no notice or hearing prior to imposing the first $12,000 penalty on Plaintiff for failing to have workers' compensation insurance. (Dkt. No. 24, at 10–11). "Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is[provided] before an individual is finally deprived of [the property interest.'" *Nnebe*, 644 F.3d at 158 (quoting *Brody v. Vill. Of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)). "[N]ecessity of quick action by the State or the impracticality of providing any meaningful pre[-]deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). "The general rule is that a pre-deprivation hearing is required, but the *Mathews* inquiry 'provides guidance in determining whether to tolerate an exception to the rule requiring pre-deprivation notice and hearing.'" *Nnebe*, 644 F.3d at 158 (internal citation and quotation marks omitted).

Turning to the *Mathews* factors, the Court concludes that Plaintiff plausibly alleges that the private interest (first factor) affected by the imposition and enforcement of the fines—Plaintiff's property interest in his money—is significant; according the Amended Complaint the fines are "killing" his business, (*see* Dkt. No. 24, at 23 (alleging that "Plaintiff laid off his employee" and has "attempted to run his business as a sole proprietor, but" "could not carry the workload"). *See Nnebe*, 644 F.3d at 159 (discussing private interest and noting that "[t]he Supreme Court has 'repeatedly recognized the severity of depriving someone of the means of his livelihood'" (quoting *Gilbert v. Homar*, 520 U.S. 924, 932 (1997))). The government interest (third factor) is likewise significant: the New York legislature has deemed the failure of an employer to carry workers' compensation insurance "an immediate serious danger to public health, safety, or welfare," and has granted civil enforcement authority to the chair of the WCB. N.Y. Workers' Comp. Law § 141-1a(4)(a). The Court therefore considers the second factor, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because penalties accrue for each ten-day period of noncompliance with the workers' compensation insurance requirements, there is the risk that an employer will continue accrue additional penalties while waiting for review. (Dkt. No. 47-2, at 1). Even assuming that the State's interest in preventing the danger posed to public health and safety by an employer's failure to maintain workers' compensation insurance is greater than Plaintiff's interest in a pre-deprivation hearing to avoid accruing penalties, the absence of pre-deprivation process would only be permissible so long as "the post-deprivation hearing affords adequate process." *Nnebe*, 644 F.3d at 159.

Plaintiff argues that the redetermination review procedure provided no meaningful opportunity for him to show that he in fact had coverage during the alleged period of noncompliance and that the penalty was unwarranted. According to the Kafkaesque letter denying review, the WCB was "unable" to consider Plaintiff request for redetermination review because he was "not in compliance with the requirements for coverage under the WCL for the . . . period" of September 30, 2015 to date. (Dkt. No. 24, at 47). It is plausible to infer, from the Board's claimed inability to consider Plaintiff's request for redetermination, that Plaintiff received no opportunity, meaningful or otherwise, to assert that he in fact had coverage during the period of alleged noncompliance or challenge the validity of the continuously-increasing penalty. *See Krimstock*, 306 F.3d at 69 (declining to "dictate a specific form for the prompt retention hearing," but holding "that, at a minimum, the [post-deprivation] hearing must enable claimants to test the probable validity of continued deprivation"); *Catanzaro*, 188 F.3d at 61 (explaining that due process would not be satisfied unless there is a "meaningful means by which to assess the propriety of the State's action . . . after the initial taking").

Defendants argue that even if there were an error by the WCB during the redetermination review process, Plaintiff's due process claim fails because WCL § 23 provides a further avenue of review and enabled Plaintiff to appeal the WCB's decision "to the Appellate Division, Third Department and then to the Court of Appeals." (Dkt. No. 47-1, at 20). "The fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding. So long as state appellate remedies are available, a Section 1983 [due process] action is not an available vehicle for relief." *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152–53 (2d Cir. 2010); *see also Lautman v. Vill. of Saugerties, N.Y.*, No. 1:13-cv-00264, 2014 WL 1653189, at *7, 2014 U.S. Dist. LEXIS 56241, at

*19 (N.D.N.Y. Apr. 23, 2014) ( concluding that because the plaintiff "had the ability to challenge any decisions reached by the Supreme Court through an appeal to the Appellate Division," the plaintiff "had available to him a post-deprivation remedy"). WCL § 23 provides that: "within thirty days after notice of an administrative redetermination review decision by the chair pursuant to subdivision five of section fifty-two . . . has been served upon any party in interest, an appeal may be taken therefrom to the appellate division of the supreme court, third department, by any party in interest." N.Y. Workers' Comp. Law § 23. The decision to which Defendants refer is the October 7, 2016, letter Plaintiff received from the "Penalty Review Unit." (Dkt. No. 24, at 47). While the WCB Chair's name is on the letterhead,[10] the letter indicates that the determination was made by the WCB. (*See* Dkt. No. 24, at 47 ("[T]he Board has determined . . . .")). The Defendants have not addressed how a letter stating that the *Board* was "*unable* to consider" the Plaintiff's request for redetermination constitutes a "redetermination review *decision* by the *chair*" under WCL § 23. Plaintiff's request was not denied; since he was told to have the NYSIF submit coverage information electronically it would appear that the Board had not made a final ruling on his request. It is thus not clear to the Court that the Board's October 7, 2015 letter is a final determination from which the Plaintiff could appeal. Thus, at this early stage of the litigation, Defendants have failed to establish the availability of appellate remedies.

Having considered the *Mathews* factors, the Court finds that the Amended Complaint plausibly alleges that the Defendant WCB violated Plaintiff's right to procedural due process.

### b.     WCB Defendants – Personal Involvement

"An individual may be held liable under . . . § 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir.

---

[10] The New York Governor's name is also on the letterhead. (Dkt. No. 24, at 47).

2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

> Personal involvement can be established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring. In addition to fulfilling one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.

*Id.*

Here, viewed in the light most favorable to Plaintiff, the Amended Complaint alleges that the Commissioners of the WCB, Foster, Paprocki, Higgins, Lobban, Williams, Hull, Ausili, Crain, and Stasko, made the determination not to consider Plaintiff's request for redetermination of the imposition of the penalty. If these individuals directly participated in the determination that would be sufficient at the pleading stage to allege personal involvement. *See, e.g.*, *Ruston v. Town Bd. for Town of Skaneateles*, No. 06-cv-927, 2009 WL 3199194, at *4, 2009 U.S. Dist. LEXIS 90964, at *12 (N.D.N.Y. Sept. 30, 2009) ("Where the alleged deprivations occurred as a result of a board vote, involvement as a voting member of the board may be sufficient personal involvement."). The applicable regulations indicate that decisions by the Board "may be by a member or panel of the Board or by a Workers' Compensation Law Judge." 12 N.Y.C.R.R. § 300.1(a)(3). There is nothing in the Amended Complaint or attached documents that indicates that all WCB members were involved in the imposition of the penalties or addressed Plaintiff's request for review. Nor is there anything before the Court that indicates that any of the named WCB members, in particular, were involved. Thus, there are insufficient facts to hold all of these

individuals responsible. In view of Plaintiff's pro se status, however, the Court will allow him to proceed against three individual Doe WCB panel members.[11] *See Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 642 (2d Cir. 2009) (referring to "a three-member Board panel" of the WCB). There is no allegation, however, that Rodriguez, as Chair of the WCB, was personally involved. Accordingly, to the extent Plaintiff sues Rodriguez in her individual capacity, such claim is dismissed.

### c.     NYSIF Defendants – Generally

Plaintiff contends that the NYSIF, and Defendants Madoff and Dion violated his procedural due process rights in connection with their failure to process the assignment of interest in the workers' compensation insurance policy, acceptance of his premium payments, and failure to notify him of the cancellation of the policy. (Dkt. No. 24, at 11). Defendants seek dismissal of this claim on the basis that the Amended Complaint fails to allege a viable procedural due process claim.[12]

Defendants summarily argue that the Amended Complaint does not "allege a deprivation of any right or interest caused by NYSIF." (Dkt. No. 47-1, at 22). They have not addressed, however, whether Plaintiff had a property interest in the workers' compensation policy at issue following his completion of the assignment of interest paperwork and the NYSIF's acceptance of

---

[11] The Court notes that unlike the Doe Penalty Review Board members, *see supra* note 6, Plaintiff appears to have served these named Defendants. (Dkt. No. 27). If Plaintiff wishes to pursue the claims against the three WCB Doe panel members, he must take reasonable steps through discovery to ascertain his or her identities. Upon learning the identities of these individuals, Plaintiff must seek permission to amend his Amended Complaint to properly name him or her as a defendant herein.

[12] Defendants assert that as an insurance provider, the NYSIF is "empowered to issue insurance policies," but "is not responsible for the imposition of penalties for failure to provide insurance." (Dkt. No. 47-1, at 21). The Court only considers the NYSIF Defendants' role with respect to the alleged failure to endorse the assignment of interest and acceptance of premium payments on the workers' compensation policy at issue.

Plaintiff's premium payments.[13] Accordingly, the Court assumes Plaintiff sufficiently alleged a property interest in the policy.

Defendants next argue that "[e]ven if there were an action of NYSIF which constituted a deprivation, New York law provides adequate post-deprivation relief through its Article 78 procedures." (Dkt. No. 47-1, at 22). Indeed, "when an action concerns the review of an adverse State agency determination, and recovery of damages is incidental to the primary claim, a CPLR article 78 proceeding in Supreme Court is the proper forum for relief." *Shermar, Inc. v. State of New York*, 11 Misc. 3d 1088(A) (N.Y. Ct. Cl. 2006).[14] The availability of an Article 78 proceeding may satisfy procedural due process requirements "[w]hen the state conduct in question is random and unauthorized." *Rivera–Powell*, 470 F.3d at 465. Where, however, the plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.* "Under those circumstances, 'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *HANAC*, 101 F.3d at 880). Defendants recite caselaw concerning the adequacy of an Article 78 proceeding for due process purposes, but have not addressed, or taken a position with respect to, whether Dion or Madoff's alleged actions were random and unauthorized or in accord with state procedure. (*See* Dkt. No. 47-1, at 22). Nor have Defendants

---

[13] Nor have Defendants addressed whether Plaintiff's allegation that he was irrationally or arbitrarily denied insurance coverage is sufficient to state a substantive due process claim. *Cf.*, *Strunk v. N.Y. State Ins. Fund*, 47 F. App'x 611, 612 (2d Cir. 2002) (affirming dismissal of due process claim against NYSIF employees where the plaintiff failed to allege "the existence of a property interest in the issuance of a workers' compensation policy or that he was irrationally or arbitrarily denied coverage, as required to state a due process claim").

[14] As discussed *supra* Section V.B.3., claims for money damages against the NYSIF must be brought in the New York Court of Claims. When, however, "an action concerns the review of an adverse State agency determination, and recovery of damages is incidental to the primary claim," "a CPLR article 78 proceeding" is "the proper forum for relief." *Shermar*, 11 Misc. 3d 1088(A) (finding claim concerning NYSIF's alleged overcharging of workers' compensation premiums was improperly filed in Court of Claims and that claimant was "required to seek redress through a CPLR article 78 proceeding").

addressed, with any specificity,[15] the regulations, if any, governing the NYSIF's management of assignment of interest requests, acceptance of insurance premium payments, or cancellation of policies.[16] Thus, because "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut," *Rivera–Powell*, 470 F.3d at 465, any determination regarding the NYSIF's purported actions, and whether they were random and unauthorized or pursuant to established state procedure, with respect to the handling of Plaintiff's request for the assignment of interest, would be premature at this stage of the litigation. Defendants, therefore, are not entitled to dismissal on the ground that Article 78 review may be available. *See, e.g.*, *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 612 (E.D.N.Y. 2011) (concluding, at summary judgment stage, that "because the Court cannot say that the alleged deprivations were 'random and unauthorized,' the availability of an Article 78 remedy does not automatically satisfy due process and preclude a section 1983 claim"). Moreover, as Defendants have not addressed what process was due under the *Mathews* factors, the Court proceeds no further in its evaluation of Plaintiff's procedural due process claim against the NYSIF Defendants.

### d.    NYSIF Defendants – Personal Involvement

Dion and Madoff argue that they are entitled to dismissal of the due process claims against them because the Amended Complaint fails to allege their personal involvement. (Dkt.

---

[15] Defendants only cite the regulation concerning the NYSIF's power to issue insurance policies, 12 N.Y.C.R.R. § 450.1. (Dkt. No. 47-1, at 21).

[16] In his opposition to Defendants' motion to dismiss, Plaintiff asserts that the NYSIF Defendants violated WCL § 54(5)(a), which governs the cancellation of an workers' compensation insurance policy. (Dkt. No. 54, at 7). This provision may be relevant to the due process inquiry in the event discovery reveals a cancellation of the policy at issue, but to the extent Plaintiff seeks to advance a claim under WCL § 54(5), it contains no express private right of action. *See Arch Ins. Co. v. Sky Materials Corp.*, No. 17-cv-2829, 2019 WL 1316950, at *2, 2019 U.S. Dist. LEXIS 49373, at *4 (E.D.N.Y. Mar. 22, 2019) (observing that the parties agreed "that § 54 does not contain an express private right of action"). Nor does there appear to be there an implied right of action. *Id.* 2019 WL 1316950 at *3, 2019 U.S. Dist. LEXIS 49373, at *7.

No. 47-1, at 9–11). Viewed in the light most favorable to Plaintiff, the Amended Complaint alleges that Dion, a NYSIF employee, sent Plaintiff a transfer of interest form on behalf of the NYSIF stating that "[u]pon receipt of this form properly completed, we will issue an endorsement effecting the transfer of the policy," (Dkt. No. 24, at 9, 28), that Plaintiff sent the form back to Dion, (Dkt. No. 24, at 18), and that Dion spoke on the phone with Plaintiff, (Dkt. No. 24, at 9), "terrified Plaintiff's insurance agent to the point where she resigned from Plaintiff's account,"[17] "maliciously den[ied] Plaintiff a change in workman's compensation policy Federal tax number," "failed to communicate his reasons for sitting on Plaintiff's policy change," and never sent a cancellation notice. (Dkt. No. 24, at 11, 22). Reading this pro se pleading with the special solicitude to which it is entitled, the Court concludes that the Amended Complaint plausibly alleges Dion's personal involvement in the failure to process the assignment of interest and transference of the workers' compensation policy that led to the alleged deprivation of Plaintiff's property interest in the policy. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) ("[A]s we understand it, 'direct participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." (footnote omitted)).

The allegations with respect to Madoff, the executive director of the NYSIF, however, are insufficient. Plaintiff alleges that Madoff violated "criteria 2, 3, and 4 of the individual liability" requirements. (Dkt. No. 24, at 3). "[A] plaintiff's obligation to provide the 'grounds' of 'his entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore,

---

[17] The Amended Complaint contains no allegations regarding the content of any conversations that may have occurred between Dion and Plaintiff or Dion and Plaintiff's insurance agent.

Plaintiff's claims against Defendant Madoff are dismissed. *See Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 275 (W.D.N.Y. 2014) (dismissing claims against supervisory official where the plaintiff's "allegations regarding . . . personal involvement are conclusory" and he "merely recited the legal standard required for imposing supervisory liability, without providing any supporting factual allegations"). Accordingly, Defendants' motion to dismiss the due process claims against Dion and Madoff is granted.

### 7. Excessive Fines

Plaintiff alleges that the $22,000 in penalties assessed against him by the WCB constitutes an excessive fine, in violation of the Eighth Amendment. (Dkt. No. 24, at 17). Defendants move to dismiss this claim on the ground that the Amended Complaint fails to state a plausible claim for relief under the Excessive Fines Clause.[18] (Dkt. No. 47-1, at 23–25).

The Eighth Amendment prohibits the imposition of "excessive fines." U.S. Const., Amend. 8. "[T]he word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). The Excessive Fines Clause thus "'limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Timbs v. Indiana*, 139 S.Ct. 682, 687 (2019) (quoting *United States v. Bajakajian*, 524 U.S. 321, 328 (1998)). There is a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, the Court must "determine

---

[18] In their reply, Defendants assert that Plaintiff has abandoned this claim by failing to respond to their argument. (Dkt. No. 55, at 7). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). The Court therefore declines to find Plaintiff, who is proceeding pro se, has abandoned this, or any other claim. *Arena v. Irondequoit Police Dep't*, 228 F. Supp. 3d 242, 243 (W.D.N.Y. 2017) ("Plaintiff's failure to respond to the motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims.").

whether the Excessive Fines Clause applies at all." *Id.* at 109. The clause only applies to a fine "that may be characterized, at least in part, as 'punitive'"—i.e., a fine intended "to punish." *Id.* (citing *Bajakajian*, 524 U.S. at 327–29). "In contrast, purely 'remedial' forfeitures"—i.e., a fine intended "to compensate the Government for a loss or to restore property to its rightful owner— fall outside the scope of the Excessive Fines Clause." *Id.* (citing *Bajakajian*, 524 U.S. at 329).

Second, the court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id.* "A [fine] is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *Id.* at 110 (quoting *Bajakajian*, 524 U.S. at 334). The Second Circuit has laid out four factors to guide a court's determination of whether a fine is grossly disproportionate:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015) (quoting *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010)). The Second Circuit has instructed that in addition to these factors, courts may consider "whether the [fine] would deprive the [individual] of his livelihood, i.e., his 'future ability to earn a living.'" *Viloski*, 814 F.3d at 111 (quoting *United States v. Levesque*, 546 F.3d 78, 85 (1st Cir. 2008)).

### a.     WCB Defendants – Generally

Here, Defendants appear to argue that the penalties imposed under WCL § 52(5), are not punitive in nature—asserting that the Uninsured Employers Fund of the Workers' Compensation Board is "capitalized in part, by the penalties that are imposed pursuant to WCL § 52(5)" and that "in the event there is an uninsured claim it is very possible that the [Uninsured Employers

Fund] would be responsible to pay benefits that would far eclipse the penalty amount that was issued to the Plaintiff." (Dkt. No. 47-1, at 25). This assertion, however, falls outside the Amended Complaint and is therefore irrelevant to the Court's assessment. Further, when the $22,000 fine for not having insurance is contrasted with the Amended Complaint's allegation that the actual cost of insurance premiums during the relevant period, was approximately $767, (Dkt. No. 24, at 33, 34, 38), it is plausible to infer that the fine has a punitive, as opposed to purely remedial, purpose. *See Farina v. Metro. Transp. Auth.*, No. 18-cv-1433, 2019 WL 3966163, at *13, 2019 U.S. Dist. LEXIS 142408, at *36 (S.D.N.Y. Aug. 21, 2019) (finding, based on allegations "that defendants administer fees and penalties that are multiples of the actual toll, and that the fees far exceed the costs of locating and contacting the driver to collect an unpaid toll," that the plaintiffs "plausibly alleged that the disputed fees were at least partly punitive in nature and therefore subject to scrutiny under the excessive fines clause") (internal quotation marks omitted).

While Defendants contend that "the penalties at issue are were nothing more than statutory calculations," (Dkt. No. 47-1, at 24), they have not addressed any of the factors the Second Circuit articulated in *George*, 779 F.3d at 122, or whether the fine is "unconstitutionally excessive." *Viloski*, 814 F.3d at 109. Moreover, Plaintiff has alleged that the fine is grossly disproportional to the gravity of his offense: the alleged failure to procure a name change from Mountain Time Furniture to Mountain Time Auctions on the existing, and paid for, workers' compensation insurance policy. Thus, Plaintiff has adequately alleged an excessive fines claim against the WCB—here, Defendant Rodriguez in her official capacity.[19] *See Dubin v. Cty. of*

---

[19] Defendants argue that Plaintiff's excessive fines claim fails at the outset because Plaintiff concedes "no policy of insurance was ever issued under his name." (Dkt. No. 47-1, at 24). Read in the light most favorable to Plaintiff, however, the Amended Complaint alleges that Mountain Time Auctions was covered, during the relevant time

*Nassau*, 277 F. Supp. 3d 366, 403 (E.D.N.Y. 2017) (denying motion to dismiss where the complaint alleged that the fine was "at least in part, punishment imposed against individuals for simply being issued a ticket without any findings of fact, nor proof of any actual violations," the defendants did not "argue that the [complaint] fails to plausibly assert that the [fine] is 'unconstitutionally excessive,'" and the plaintiffs alleged the fine was "disproportionate in comparison to the accused actions" (internal quotation marks omitted)).

### b.     WCB Defendants – Personal Involvement

The Amended Complaint plausibly alleges the personal involvement of the members of the WCB, who, according to the June 2, 2016, Notice of Penalty, were involved in the imposition of the penalty. (Dkt. No. 24, at 42 (stating that "the Workers' Compensation Board has determined that the employer is in violation of Workers' Compensation Law Section 52(5)" and that "[a] penalty has been assessed"). As discussed *supra* Section V.B.6.b., there is no indication that all WCB members were involved or that the named individuals, in particular, were involved. The Court therefore allows this claim to proceed against three individual Doe WCB panel members. Further, as the Amended Complaint contains no allegations suggesting Defendant Rodriguez's involvement in the issuance of the penalty, Defendants' motion to dismiss the excessive fines claims against Defendant Rodriguez in her individual capacity is granted. Accordingly, this claim may proceed against Defendant Rodriguez in her official capacity and three Doe WCB panel members, in their individual capacities.

---

period, by a policy of workers' compensation insurance the NYSIF issued to the business' previous owner. (*See generally* Dkt. No. 24).

### c.     NYSIF Defendants – Generally

Nothing in the Amended Complaint suggests that the NYSIF Defendants imposed the WCB penalties at issue in this case, thus Plaintiff fails to state a plausible excessive fines claim against the NYSIF Defendants.

## VI.    MOTIONS FOR INJUNCTIVE RELIEF

On November 15, 2019, the WCB Judgment Unit filed a judgment in connection with the assessment of penalties in this case and "issued their standard related documents, including a restraining notice." (Dkt. No. 61, at 1). On December 5, 2019, Plaintiff filed motions for a temporary restraining order and a preliminary injunction seeking to restrain the WCB from enforcing the judgment. (Dkt. Nos. 59, 60). Defendants' attorneys, who were apparently unaware of the judgment until they received Plaintiff's motion papers, consulted with the WCB Judgment Unit, and on December 6, 2019, the WCB vacated the judgment. (Dkt. No. 61, at 1; Dkt. No. 62-1). In view of the vacatur of judgment, (Dkt. No. 62-1), Plaintiffs' motions to restrain enforcement of the judgment are denied as moot.

## VII.   CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motions to strike (Dkt. Nos. 50 and 58) are **DENIED**, however the Court disregards all of Defendants' submissions, except the second page of the June 2, 2016, notice, (Dkt. No. 47-4, at 2), and has not considered them in evaluating Defendants' motion to dismiss; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 47) is **GRANTED in part** and the following claims are **DISMISSED**:[20]

- Official capacity claims against all Defendants except Rodriguez

- Individual capacity claims against Rodriguez

- Claims against NYSIF, WCB, and WCB Penalty Review Unit

- Equal protection claim

- Excessive fines claim against Madoff and Dion

- Individual capacity claims against Defendants Foster, Paprocki, Higgins, Lobban, Williams, Hull, Ausili, Crain, and Stasko

It is further **ORDERED** that Defendants' motion to dismiss (Dkt. No. 47) is otherwise **DENIED**; and it is further

**ORDERED** that the Clerk is directed to terminate Defendants Foster, Paprocki, Higgins, Lobban, Williams, Hull, Ausili, Crain, and Stasko and add as Defendants three Doe WCB panel members, in their individual capacities; and it is further

**ORDERED** that Plaintiff's motions for a temporary restraining order (Dkt. No. 59) and a preliminary injunction (Dkt. No. 60) are **DENIED as moot**.

**IT IS SO ORDERED.**

**Dated: January 23, 2020**

Brenda K. Sannes
U.S. District Judge

---

[20] As the Court previously granted leave to amend, and there do not appear to be facts Plaintiff could allege to cure the above-dismissed claims, the Court declines to allow further amendment at this stage of the proceedings.