**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT CRAIG CASSIDY, d/b/a MOUNTAIN TIME
AUCTIONS, ANTIQUES, AND MATTRESSES,

Plaintiff,

- v -                                                    Civ. No. 8:18-CV-394
                                                                          (DJS)
CLARISSA M. RODRIGUEZ, *et al.*,

Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

ROBERT CRAIG CASSIDY
Plaintiff, *Pro Se*
Rutland, Vermont 05701

HON. LETITIA JAMES                        BRIAN W. MATULA, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER[1]

Plaintiff *pro se* filed this action on April 2, 2018.  Dkt. No. 1, Compl.  In November

2018, Motions to Dismiss were granted in part and denied in part and Plaintiff was granted

leave to file an amended complaint.  Dkt. No. 23 at pp. 27-29.  The Amended Complaint

was filed December 4, 2018.  Dkt. No. 24, Am. Compl.  Renewed Motions to Dismiss

---

[1] The parties have consented to have all proceedings in this matter handled by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 84.

resulted in the dismissal of some Defendants and certain claims.  Dkt. Nos. 52 & 67.  The sole remaining named Defendants in this action are Clarissa M. Rodriguez, the Chair of the New York Workers' Compensation Board ("WCB"), and Titian Dion, an employee of the New York State Insurance Fund ("NYSIF").  The only remaining claims are procedural due process and excessive fine claims against Rodriguez in her official capacity and a due process claim against Dion.  Dkt. No. 67 at p. 35.

Presently pending are Defendants' Motion for Summary Judgment, Dkt. No. 108, Plaintiff's Motion for Trial by Jury, Dkt. No. 110, and two motions filed by Plaintiff to strike documents submitted in support of Defendants' Motion for Summary Judgment. Dkt. Nos. 114 & 115.  The parties have filed other submissions in opposition to and in further support of the various Motions, Dkt. Nos. 113, 117, 118, 119, & 120, which the Court has fully considered in deciding the pending Motions.

## I. PROCEDURAL MATTERS

### A. Plaintiff's Motions to Strike

Before turning to the Motions addressing the merits of the Amended Complaint, the Court considers Plaintiff's Motion to Strike Defendants' Memorandum of Law, Dkt. No. 114, and Plaintiff's Motion to Strike an affidavit filed in support of Defendants' Motion for Summary Judgment.  Dkt. No. 115.  Each Motion is denied.

Plaintiff seeks to strike Defendants' Memorandum of Law based on defense counsel's failure to provide him with copies of unpublished decisions relied on in the Memorandum as required by L.R. 7.1(b)(1).  Dkt. No. 114 at p. 1.  Defense counsel

2

acknowledged the error and has now provided Plaintiff with copies of the five unpublished cases cited on behalf of Defendants.  Dkt. No. 118-1 at ¶¶ 6-7.  "A district court has discretion in deciding whether to strike a submission not in compliance with a local rule." *Laboy v. Ontario Cty., N.Y.*, 56 F. Supp. 3d 255, 259 (W.D.N.Y. 2014) (citing cases).  However, "courts throughout the Second Circuit have typically exercised such discretion only when the opposing party is prejudiced by the violation." *Catz v. Precision Glob. Consulting*, 2021 WL 1600097, at *4 (S.D.N.Y. Apr. 23, 2021).[2]  Plaintiff's initial Motion made no claim of prejudice.  Dkt. No. 114.  In a subsequent filing after Defendants provided him with copies of the unpublished decisions, Plaintiff claims that the late service "could provide no help to Plaintiff in the organizing and filing" of prior submissions.  Dkt. No. 120 at p. 7.  Plaintiff has failed to establish the prejudice required to justify striking Defendants' Memorandum of Law.  Indeed, Plaintiff made an additional submission after receiving the unpublished cases, Dkt. No. 120, but offered no argument with respect to the unpublished cases despite the opportunity to do so.

Plaintiff also seeks to strike the affidavit of Michael Papa, an attorney with the Workers' Compensation Board.  Dkt. No. 115.  It appears that Plaintiff's Motion is based on two grounds: the inclusion of facts set forth in the Papa Affidavit in Defendants' Rule 56.1 Statement of Facts and Plaintiff's belief that information contained in the affidavit is not accurate.  *Id.* at ¶¶ 2 & 4-5.  This Court "has discretion when deciding motions to strike affidavits in support of summary judgment motions." *Jennison v. Hartford Life &*

---

[2] Copies of all unpublished decisions cited here are being provided to Plaintiff with this Decision.

*Acc. Ins. Co.*, 2011 WL 3352449, at *3 (N.D.N.Y. Aug. 3, 2011). "The party moving to strike bears a heavy burden, as courts generally disfavor motions to strike, and such a motion should not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Moody v. CSX Transp.*, 2016 WL 11630020, at *4 (W.D.N.Y. July 22, 2016) (internal quotations, alterations, and citations omitted).

The Local Rule on which Plaintiff relies with respect to the Statement of Material Facts is designed to address situations in which counsel for a party seeks to offer evidence in support of a motion for which the attorney might not have personal knowledge. *See Stephenson Equip. v. ATS Specialized, Inc.*, 2013 WL 4508444, at *4 n.4 (N.D.N.Y. Aug. 23, 2013) ("attorneys generally do not possess personal knowledge of the underlying facts sufficient to render them competent to adduce an affidavit in support of a summary judgment motion"). Mr. Papa is not counsel of record for any party and instead is offering his affidavit based on personal knowledge of events relevant to this action. Dkt. No. 108-11, Papa Aff. at ¶¶ 2-3. The fact that Papa happens to be an attorney does not preclude him from participating as a fact witness in this case.

Nor is the fact that one party believes statements contained in an affidavit are untrue a proper basis to strike the affidavit because "[i]t is not appropriate to make such a credibility determination" in the context of deciding a summary judgment motion. *Flair Broad. Corp. v. Powers*, 733 F. Supp. 179, 183 (S.D.N.Y. 1990).

For these reasons, Plaintiff's Motions to Strike are denied.

## B. Plaintiff's Response to Defendants' Rule 56.1. Statement

L.R. 56.1(a) requires a party seeking summary judgment to provide "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established."  Rule 56.1(b) then requires a party opposing summary judgment to file a response to the movant's statement which:

> shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.

Defendants filed a Rule 56.1 Statement.  Dkt. No. 108-2.  Plaintiff filed a responsive document entitled "Refutation of Defendants' Statement of Material Facts" which is not fully compliant with the Local Rules because it did not, in denying the truth of facts presented by Defendants, provide specific factual citations to the record to demonstrate a dispute as to the fact.  *See* Dkt. No. 113, Pl.'s 56.1 Statement.  Defendants now seek to have all the facts set forth in their Rule 56.1 Statement deemed admitted based on this failure.  Dkt. No. 119 at pp. 2-4.

Defendants are correct that Plaintiff has failed to comply with the Local Rule. However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a Rule 56.1 statement of material facts.  *Holtz v. Rockefeller & Co., Inc.*, 258

F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts).  Here, considering Plaintiff's *pro se* status, the Court will review the entire summary judgment record to ascertain the undisputed material facts, citing to the facts as set forth in Defendants' Rule 56.1 Statement of Material Facts when properly supported by the record, and also referring to Plaintiff's submissions when practicable.  *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

## II. FACTUAL BACKGROUND

In August 2015, Plaintiff began operating a New York business named Mountain Time Auctions, Antiques, and Mattresses.  Dkt. No. 108-4, Pl.'s Dep. at pp. 27-28. Plaintiff purchased the business from Richard Harker, who operated it under the name Mountain Time Furniture.  *Id.* at pp. 28-30 & 32.  Prior to the sale, Mr. Harker maintained Workers' Compensation insurance.  *Id.* at p. 78; Dkt. No. 108-5, Dion Aff. at ¶ 4.[3] Plaintiff purchased the business from Mr. Harker pursuant to an oral contract and Plaintiff does not recall having discussed assignment of Harker's insurance policy to Plaintiff.

---

[3] Throughout the remainder of this opinion, this policy will be referred as the "Harker Policy."

Pl.'s Dep. at pp. 37 & 40.  Between August 2015 and March 2017, Plaintiff employed at least one employee.  Pl.'s Dep. at pp. 32 & 42.

Beginning in October 2015, a series of interactions took place between Plaintiff and the NYSIF on the process of transferring the Harker Policy.  *See generally* Dion Aff. NYSIF had a procedure for transferring insurance policies through completion of a standard U-3 Form.  *See* Dion Aff. at ¶ 9.  Defendant Dion was primarily responsible for addressing this matter with Plaintiff.  *See generally* Dion Aff.  Over the course of several months, Plaintiff returned three U-3 Forms to NYSIF that Dion determined were insufficient to process the transfer of the Harker Policy.  Dion Aff. at ¶¶ 11-22.  The policy was never transferred to Plaintiff's business.  Eventually, the Harker Policy was cancelled at the request of a representative of Mr. Harker, Darlene Dorsett.  Dkt. No. 108-20, Raga Aff., ¶ 17.

New York requires businesses such as Plaintiff's to carry Workers' Compensation insurance.  Dkt. No. 108-11, Papa Aff., ¶ 5.  On June 2, 2016, the New York Workers' Compensation Board provided Plaintiff with notice that a statutory penalty had been imposed based on the lack of insurance.  Papa Aff. at ¶¶ 7-8 & Ex. B; Am. Compl. at p. 42.  That notice advised Plaintiff to "request a review of this penalty if you were not required to have a policy."  Papa Aff. at Ex. B; Am. Compl. at p. 42.  Plaintiff sought a redetermination, which concluded that Plaintiff was required to maintain insurance coverage.  Papa Aff. at ¶¶ 9-10 & 12; Am. Compl. at pp. 43-47.  At the time of this initial notice the penalty imposed was $12,000.  Papa Aff. at Ex. B; Am. Compl. at p. 42.  The

penalty was subsequently increased as a result of the alleged continued failure to maintain insurance coverage.  Papa Aff. at ¶ 11.  At this time, the outstanding penalty balance is $22,500.  *Id.* at ¶ 15.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323.  To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.  DISCUSSION

### A. Due Process

Plaintiff's Amended Complaint alleges that Defendant Dion "violated his procedural due process rights in connection with [his] failure to process the assignment of interest in the workers' compensation insurance policy, acceptance of his premium payments, and failure to notify him of the cancellation of the policy." Dkt. No. 67 at p. 26 (citing Am. Compl. at p. 11). With respect to penalties imposed regarding Plaintiff's lack of workers' compensation insurance, Plaintiff alleges that his due process rights were violated by the failure of the WCB to provide any pre-deprivation process before penalties were imposed and that the post-deprivation process available to him was inadequate. Am. Compl. at pp. 14-15; Dkt. No. 67 at p. 20.

For the reasons that follow, the Court concludes that Defendants are entitled to summary judgment on both of these due process claims.

### 1. Defendant Dion

After Plaintiff's purchase of the business, Dion worked with Plaintiff over a period of months regarding transferring the Harker Policy to Plaintiff.  *See generally* Dion Aff. Plaintiff claims that Dion violated his due process rights: 1) by failing to effectuate the transfer of the Harker Policy to Plaintiff's business, and 2) as a result of his role in the cancellation of the Harker Policy.  While the record demonstrates that there are questions of fact regarding specific interactions between Plaintiff and Defendant Dion, for the reasons discussed below, Dion is nonetheless entitled to summary judgment.

A threshold consideration in any due process claim is the existence of a protected liberty or property interest.  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002); *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).  Plaintiff has failed to establish that he had a protected property interest in the Harker Policy.  Property interests are created by state law.  *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972); *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Coll. v. Roth*, 408 U.S. at 577.

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Philadelphia Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 183 (S.D.N.Y. 2020) (internal quotations and citations omitted).  Here,

"[P]laintiff was not a party to the [Harker Policy] and thus he cannot claim that his protected property interest arises from that agreement." *Hughes v. City of New York*, 197 F. Supp. 3d 467, 475 (E.D.N.Y. 2016); *see also Empire Transit Mix, Inc. v. Giuliani*, 37 F. Supp. 2d 331, 335 (S.D.N.Y. 1999) (non-party to a contract "has no protectible property interest" in it).  While the NYSIF made the assignment of policies an option, it is not something that Plaintiff had a right to under state law.  The U-3 form NYSIF uses to process such a transfer of interest specifically states: "The State Insurance Fund shall not be bound by the assignment of interest agreement . . . unless it consents thereto in writing."  Dkt. No. 113-1 at p. 10; Dion Aff. at ¶ 9; Pl.'s Dep. at p. 46 (acknowledging that he was made aware that transfer was "conditional" and subject to filing the proper paperwork).  Plaintiff does not allege and certainly has offered no documentary evidence that NYSIF ever provided such written consent.  Nor do alleged statements by Dion that if Plaintiff obtained Mr. Harker's signature the assignment would be processed, Pl.'s Dep. at p. 46, establish a property interest.  Even if Dion made such an assurance, assurances or promises of certain action by a government official are insufficient to create a property interest.  *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002); *McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001).  While Plaintiff may well have had a "unilateral expectation" that the Harker Policy would be assigned to him, the record does not establish that he had "a legitimate claim of entitlement to it." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. at 577.[4]  He thus has failed to establish a property interest in the

---

[4] That expectation may have been heightened by the fact that Plaintiff made several premium payments on the Harker Policy, *see* Dkt. No. 110 at ¶¶ 17-18, but Plaintiff has not established that those payments gave him a legal interest

insurance contract between two other parties.  *See Wojcik v. City of Romulus*, 257 F.3d 600, 610 (6th Cir. 2001) (rejecting plaintiff's claim to a "recognized property interest in the transfer of an entertainment permit which she never held.").

Even assuming the existence of a property interest in the contract, summary judgment is still appropriate.  Insofar as part of Plaintiff's claim relates to the cancellation of the Harker Policy, the record does not establish that Dion was personally involved in that action.  On the contrary, the record is clear that it was Kelsey Raga, not Dion, who processed the cancellation of the Harker Policy.  Raga Aff. at ¶ 17; Dion Aff. at ¶ 35. Plaintiff also has not raised a question of fact to the extent he alleges that the failure to assign and the ultimate termination of the Harker Policy were the result of secret dealings between Dion, Raga, and Dorsett.  Dkt. No. 113-1 at ¶ 18.  To establish a conspiracy claim of this sort, Plaintiff must prove "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Ciambriello v. Cty. of Nassau*, 292 F.3d at 324-25.  Plaintiff's purely conclusory allegations that Dion "induced" others to cancel the contract, Pl.'s Dep. at p. 21, or worked secretly to do so, Dkt. No. 113-10 at ¶ 10, fall far short of that standard and Plaintiff has provided no evidence to support his assertion that Dion entered into any type of agreement with others to deny him rights.  His claim, therefore, must be dismissed as conclusory.  *Scott v. Woodworth*, 2013 WL

---

in the policy itself.  Plaintiff relies on provisions of the Uniform Commercial Code to establish that these payments secured him such an interest.  *See* Dkt. No. 110 at pp. 11-12.  The provisions of the UCC relied upon, however, concern negotiable instruments and an "insurance policy is not a negotiable instrument."  2 Couch on Ins. § 34:17 (3d ed.); *see also* 17 Williston on Contracts § 49:119 (4th ed.).

3338574, at *14 (N.D.N.Y. July 2, 2013); *Perez v. Fischer*, 2012 WL 1098423, at *18 (N.D.N.Y. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 1088486 (N.D.N.Y. Mar. 30, 2012).

Next, Plaintiff's allegations related to Dion's conduct regarding the transfer process focus on his alleged improper and unauthorized conduct. *See* Dkt. No. 110 at p. 14 (referencing Dion's "willful refusal to accept transferor signatures") & p. 15 ("Dion should never have rejected this Assignment form"). "It is well established that, with regard to claims based on 'random, unauthorized acts by state employees,' 'the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." *Eldars v. State Univ. of New York at Albany*, 2020 WL 2542957, at *6 (N.D.N.Y. May 19, 2020) (quoting *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)); *Carpenter v. Mohawk Valley Cmty. Coll.*, 2020 WL 1915144, at *11 (N.D.N.Y. Apr. 20, 2020). With respect to the form of post-deprivation remedy, courts have repeatedly recognized that "the mere availability of an Article 78 proceeding is sufficient." *Eldars v. State Univ. of New York at Albany*, 2020 WL 2542957, at *6 (citing cases); *see also King v. New York City Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 400 (E.D.N.Y. 2016). To the extent Plaintiff claims that NYSIF improperly failed to transfer Harker's interest to Plaintiff, that was clearly a matter that could have been litigated under Article 78, either on the ground that it was required to do so by law, N.Y. C.P.L.R. § 7801(1), or that the failure to do so was

arbitrary and capricious.  N.Y. C.P.L.R. § 7801(3).  Plaintiff did not commence any state court proceeding challenging the handling of the transfer of the Harker Policy.  *See* Papa Aff. at ¶ 29; Pl.'s 56.1 Statement at ¶ 71 ("Attorney Papa is exactly correct.").  The availability of that remedy, even if not pursued, precludes this due process claim.

Finally, Dion is also entitled to judgment on the ground of qualified immunity. Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted).  Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions."  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. at 341.  Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  While the right to due process is well established, the Supreme Court has consistently reminded lower courts "not to define clearly established law at a high level of generality."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  "The dispositive question

is 'whether the violative nature of particular conduct is clearly established.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 742).

Here, there is no clearly established law that Plaintiff had a property interest in a contract to which he was not a party.  "A defendant has qualified immunity from a due-process claim when it was not clearly established at the time of the alleged deprivation that the purported property or liberty interest of which the plaintiff was deprived was, in fact, protected by the Due Process Clause."  *Airday v. City of New York*, 406 F. Supp. 3d 313, 324 (S.D.N.Y. 2019) (citing *Greenwood v. N.Y. Office of Mental Health*, 163 F.3d 119, 123-24 (2d Cir. 1998)).  There is also no clearly established law that the availability of state court review was insufficient process for Defendant Dion's allegedly random actions.  Finally, qualified immunity looks to the "particular conduct" at issue.  *Mullenix v. Luna*, 577 U.S. at 12.  Here, despite some dispute about particular aspects of the process, the record establishes that over a period of months Dion engaged with Plaintiff to facilitate  the transfer of the Harker Policy to Plaintiff pursuant to NYSIF policies.  The record establishes what remedies were available to Plaintiff to the extent he sought to challenge Dion's actions, but it is devoid of evidence that Dion was in a position to provide Plaintiff with any further process.

For all of these reasons, Defendant Dion's Motion for Summary Judgment is granted.

## 2. Defendant Rodriguez

Plaintiff's remaining due process claim is an official capacity, injunctive relief claim against Defendant Rodriguez related to the imposition of the penalty for lack of workers' compensation coverage.  Dkt. No. 23 at p. 14; Dkt. No. 67 at p. 14; Pl.'s Dep. at pp. 18-19.  As noted above, this claim concerns the lack of any process prior to the imposition of the penalty and the alleged insufficiency of post-deprivation process.  Dkt. No. 67 at p. 20.

Due process mandates that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'"  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).[5]  In determining the process due, courts weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Plaintiff's private interest here, "operating a business and . . . pursuing a particular livelihood," is clearly a strong one.  *Spinelli v. City of New York*, 579 F.3d at 171; *see also* Dkt. No. 67 at p. 22.  "The government interest . . . is likewise significant."  Dkt. No. 67 at p. 22.

---

[5] For purposes of this section the Court presumes that the assessed penalty against Plaintiff sufficiently implicates a protected property interest.

16

The other factor outlined in *Mathews* directs courts to consider "the risk of an erroneous deprivation of [the private] interest through the procedures used." *Krimstock v. Kelly*, 306 F.3d 40, 62 (2d Cir. 2002); *see also Redd v. Wright*, 2006 WL 6907552, at *7 (N.D.N.Y. Aug. 9, 2006) (identifying second factor as "the most important" one). The greater the risk of the potential error, the more pre-deprivation process that is due. *See, e.g.*, *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). By contrast, post-deprivation remedies "suffice where 'the nature of the issues at stake minimizes the risk' of wrongful deprivation." *Diaz v. Paterson*, 547 F.3d 88, 99 (2d Cir. 2008) (quoting *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 609 (1974)).

The particular question presented in this case, whether an employer has secured insurance, is not a particularly complex one which would involve significant factual or legal argument. In the mine run of cases the existence or non-existence of insurance would be a straightforward matter of providing proof of insurance coverage and is thus not one where the risk of erroneous conclusion absent a pre-deprivation hearing is high. *Campo v. New York City Employees' Ret. Sys.*, 653 F. Supp. 895, 899 (S.D.N.Y. 1987) ("the risk of erroneous deprivation in this case must be deemed minimal . . . [where] the resolution of the plaintiff's claim revolves around documentary evidence"). In fact, "in situations such as these where decisions are 'sharply focused and easily documented' and are based on an objectively verifiable set of facts, providing an individual with notice and an opportunity to file a written response is sufficiently reliable." *City Line Auto Mall,*

*Inc. v. Mintz*, 2006 WL 8439742, at *4 (E.D.N.Y. Oct. 25, 2006) (quoting *Mathews v. Eldridge*, 424 U.S. at 343).

In addition, "the risk of erroneous deprivation is mitigated by the availability of a prompt post-deprivation hearing." *Nnebe v. Daus*, 644 F.3d 147, 159 (2d Cir. 2011). New York's Workers' Compensation Law outlines a detailed post-deprivation procedure. The statute provides that an employer who wishes to challenge the imposition of a penalty imposed under Section 52 may seek "a redetermination review of such penalty." N.Y. Workers' Comp. Law § 52(5).   In the event of an adverse determination on redetermination, the law provides for an appeal to be taken to the New York State Appellate Division, Third Department.  N.Y. Workers' Comp. Law § 23; *see also* N.Y. Workers' Comp. Law § 52, Practice Commentaries.   The initial notice provided to Plaintiff made him aware of the availability of the initial step in the process, the request for review of the initial determination.  Papa Aff. at ¶¶ 7 & 9 & Ex. B; Am. Compl. at Ex. 13.  Plaintiff availed himself of this right and filed a request for review with the WCB. Papa Aff. at ¶ 10 & Ex. C; Am. Compl. at Ex. 14.  That review concluded that Plaintiff was "not in compliance with the requirements for coverage." Papa Aff. at Ex. E; Am. Compl. at p. 47.  At the time of this request for review, the penalty that had been imposed against Plaintiff was $12,000.  *Id.*  Plaintiff was subsequently advised that additional penalties were imposed, Papa Aff. at ¶¶ 13 & 15, but Plaintiff does not claim, and there is no evidence in the record to suggest, that Plaintiff pursued this administrative remedy regarding the later penalties.  Plaintiff concedes that he did not proceed to appeal that

initial determination to the Appellate Division.   Pl.'s 56.1 Statement at ¶ 71.   This statutory regime, including the opportunity for review by a neutral court, provided ample due process.   *Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 100 (2d Cir. 1988) ("Because a judicial hearing in a state court was available to [plaintiff] on timely demand, due process requirements for a post-deprivation hearing are met.").[6]

"Particularly in property cases, post-deprivation remedies have been held adequate when they can make the aggrieved party completely whole."   *Mohamed v. Vician*, 490 F. Supp. 954, 959 (S.D.N.Y. 1980).   The availability of the post-deprivation review here could clearly have done so since a finding that Plaintiff did in fact have proper insurance would have meant he was not subject to the disputed penalty.   This consideration bears particular weight here where Plaintiff has not yet actually paid any of the penalty imposed by the WCB nor have any funds been garnished by the WCB to satisfy the penalty.   Papa Aff. at ¶¶ 26-27.

Having balanced the public and private interests with the process that was provided to Plaintiff and that was available under state law, the Court concludes that sufficient notice and opportunity to be heard was provided such that no due process claim is stated.

## B. Excessive Fines

The Excessive Fines Clause of the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed."   U.S. CONST. amend. VIII.   This "protection against excessive fines guards against abuses of government's punitive or

---

[6] This is not to suggest that the mere existence of state court review is sufficient to satisfy due process, but rather to demonstrate the impact such review has on the overall consideration of the *Mathews* factors.

criminal-law-enforcement authority." *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019).

Courts apply a two-step analysis to claims brought under the Excessive Fines Clause. *See*

*United States v. Bajakajian*, 524 U.S. 321, 334-336 (1998). "At the first stage, we

determine whether the Excessive Fines Clause applies at all. If we conclude that it does,

we proceed to the second step and determine whether the challenged forfeiture is

unconstitutionally excessive." *United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016)

(internal citation omitted).[7]

In considering that second question:

> a court weighs four factors to determine whether the fine is grossly
> disproportional to the underlying offense. These factors include: (1) the
> essence of the crime of the defendant and its relation to other criminal activity,
> (2) whether the defendant fits into the class of persons for whom the statute
> was principally designed, (3) the maximum sentence and fine that could have
> been imposed, and (4) the nature of the harm caused by the defendant's
> conduct.

*Ese A. O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, 2021 WL 2581446, at *5

(S.D.N.Y. June 23, 2021) (internal citations and quotations omitted); *see also United*

*States v. Viloski*, 814 F.3d at 110-11. *Viloski* discusses a fifth relevant factor - whether a

challenged forfeiture would destroy a defendant's livelihood. In identifying this factor,

however, the Second Circuit specifically stated that "courts need not consider this fifth

factor in all cases." *United States v. Viloski*, 814 F.3d at 112. The material facts

---

[7] Defendants make no argument that the Excessive Fines Clause is not implicated. "A fine refers to a payment to a sovereign as punishment for some offense." *United States v. Davis*, 648 F.3d 85, 96 (2d Cir. 2011) (internal quotations omitted). Under the circumstances the penalty at issue here would clearly seem to qualify. As a result, the Court turns directly to whether or not the fine imposed here was excessive.

underlying these factors are not in dispute and so the Court may determine, as a matter of law, whether the fine was excessive. [8]

The nature of the offense here - the failure to secure Workers' Compensation insurance - is significant. New York law "deems the failure of an employer to carry workers' compensation insurance to be 'an immediate serious danger to public health, safety or welfare.'" *Mamaroneck Vill. Tile Distribs., Inc. v. Workers' Comp. Bd.*, 68 A.D.3d 1423, 1424 (3d Dep't 2009) (quoting N.Y. Workers' Comp. Law § 141–a(4)(a)). As a result, New York law "provides that employers who fail to provide workers' compensation benefits to their employees are civilly and criminally liable." *Lemus v. Pezzementi*, 2020 WL 133591, at \*5 (S.D.N.Y. Jan. 10, 2020).

With respect to the second factor, there is no question that Plaintiff, as a business owner, was part of the class of people at whom this statute was aimed. *Boles v. Dormer Giant, Inc.*, 4 N.Y.3d 235, 240 (2005) ("Employers that do not secure workers' compensation for their employees are not holding up their end of the bargain between business and labor.").

Given that the overall analysis ultimately turns on a proportionality rationale, the third factor - consideration of the maximum penalties that could have been imposed - weighs heavily in the Court's analysis. *See United States v. Bajakajian*, 524 U.S. at 336 (emphasizing centrality of proportionality analysis). The failure to obtain proper

---

[8] While Plaintiff disputes certain facts regarding efforts that may have been undertaken with respect to transferring insurance to his business and why those efforts were unsuccessful, the undisputed record before the Court is that there was no proper insurance coverage during the relevant time period.

insurance coverage can subject a party to criminal prosecution.  N.Y. Workers' Comp. Law § 52(1)(a) & (b).  The lack of insurance can also result in civil fines of "up to two thousand dollars for each ten day period of non-compliance or a sum not in excess of two times the costs of compensation for its payroll."  N.Y. Workers' Comp. Law § 52(5). Additionally, a prolonged failure to have insurance in place may result in the issuance of a "stop-work order on the employer, requiring the cessation of all business operations effective immediately."  N.Y. Workers' Comp. Law § 141-a(4)(a).  "[T]he Supreme Court has admonished that 'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'"  *Tsinberg v. City of New York*, 2021 WL 1146942, at *8 (S.D.N.Y. Mar. 25, 2021) (quoting *United States v. Bajakajian*, 524 U.S. at 336). As a result, the Court affords significant deference to the legislative judgment imposing strong sanctions on the failure to obtain such insurance.

The financial penalty that was imposed was $22,500.  Papa Aff. at ¶ 15.[9]  The record establishes that the maximum penalty under the applicable statute could have been as high as $90,000.  Papa Aff. at ¶ 15 n. 2.  There is no allegation that a criminal prosecution was commenced against Plaintiff, or that any stop work order was entered. Taken together, these factors demonstrate that though substantial, the civil fine imposed upon Plaintiff was significantly less than the maximum possible penalties that could have been imposed under New York's Workers' Compensation Law.

---

[9] That number represents a reduced assessment from the initial $28,000 penalty imposed.  *See* Papa Aff. at ¶ 13.

Fourth, the Court must consider "the nature of the harm caused by the defendant's conduct." *Ese A. O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, 2021 WL 2581446, at *5. New York law deems the harm at issue here "an immediate serious danger to public health, safety or welfare." N.Y. Workers' Comp. Law § 141–a(4)(a). As noted, that judgment is entitled to deference. *Tsinberg v. City of New York*, 2021 WL 1146942, at *8. As significant as such a harm is on its own, the record also suggests that the lack of insurance coverage may have delayed payment for the treatment of one of Plaintiff's employees who was injured at work. *See* Dkt. No. 113-1 at ¶ 15. While the precise facts of this situation are not fully developed in the record, the situation highlights the importance of the insurance coverage at issue and the potential harms that exist in its absence.

Finally, to the extent that the Court should consider the impact of a sanction on the defendant's livelihood, *United States v. Viloski*, 814 F.3d at 112, the Court notes that Plaintiff's dispute with Defendants regarding the state of insurance coverage dates to 2015 and yet he has not paid the penalty assessed against him. He cannot, therefore, truly attribute any difficulties associated with his alleged business failures to the existence of the penalty. Thus, there is no evidence that Defendants' actions have "destroyed" Plaintiff's livelihood. *United States v. Viloski*, 814 F.3d at 112.

"Ultimately, whether a fine is excessive involves solely a proportionality determination. A penalty is unconstitutionally excessive if it is grossly disproportional to the gravity of a defendant's offense." *Ese A. O'Diah v. TBTA-Triborough Bridge &*

*Tunnel Auth.*, 2021 WL 2581446, at *5; *see also United States v. Bajakajian*, 524 U.S. at 336.  Having considered the relevant standard and facts, the Court concludes that under the circumstances presented here the penalty imposed was not grossly disproportionate.

Defendants, therefore, are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### C. Plaintiff's Motion for Trial By Jury

Plaintiff's Motion sets forth his view of the relevant facts and makes certain legal arguments in support of his position.  Dkt. No. 110.  The relief requested in the Motion is that a jury "decide how they want their state to operate in the future in addition to how much compensation is due this Plaintiff."  *Id.* at p. 15.  In light of the Court's conclusions above, however, that Defendants are entitled to judgment as a matter of law on each of Plaintiff's remaining claims, the Motion for Trial by Jury is denied.

### D. Claims Against Doe Defendants

Finally, the Court docket reflects that Plaintiff has named six "Doe" Defendants who it appears have never been identified or served with process.  Am. Compl.; Dkt. No. 64 at p. 35.  "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice."  *Delrosario v. City of New York*, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010).  Given that Plaintiff has not yet identified the "John Doe" Defendants, the Court dismisses the Amended Complaint as to the "Doe" Defendants. *See* FED. R. CIV. P. 4(m) (requiring dismissal, absent a showing of "good cause," of claims

against a defendant who is not served within ninety days of the filing of the complaint); *Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 403 (N.D.N.Y. 1998) (citing cases dismissing John Doe defendant where plaintiff was unable to identify individual following discovery and summary judgment was being entered for remaining defendants).

## V.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's Motions to Strike (Dkt. Nos. 114 & 115) are **DENIED**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 108) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion for Trial by Jury (Dkt. No. 110) is **DENIED**; and it is further

**ORDERED**, that the remaining "John Doe" Defendants are **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Dated:   September 30, 2021
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

25